## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**OCZ TECHNOLOGY GROUP, INC., et al.**[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 13-13126 (PJW)<br><br>Jointly Administered<br><br>**Docket Ref. No. 11** |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION SECURED FINANCING PURSUANT TO 11 U.S.C. § 364, (II) AUTHORIZING THE DEBTORS' LIMITED USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364, AND (IV) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

Upon the motion of the debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), dated December 2, 2013 (the "**Motion**"), (a) seeking the entry of this interim order (this "**Order**") and a final order (the "**Final Order**"): (i) authorizing OCZ Technology Group. Inc. ("**OCZ**" or "**Borrower Representative**") and the other Debtors (collectively, in such capacity as postpetition borrowers, collectively, the "**Borrowers**" and individually, a "**Borrower**") to obtain senior secured post-petition financing in an aggregate principal amount not to exceed the Maximum Amount (as defined below) (the "**Postpetition Facility**"), pursuant to section 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"), and authorizing each of the Debtors' non-Debtor foreign subsidiaries (collectively, the "**Guarantors**") to unconditionally guaranty each Borrower's obligations under the Postpetition Facility, from Toshiba Corporation or its designee (in its individual capacity, "**Toshiba**"), as postpetition lender (the "**Postpetition Lender**"), pursuant to the terms of this Order, which

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: OCZ Technology Group, Inc. (1093); Indilinx Inc. (0763); and Sanrad Inc. (2916). The Debtors' principal offices are located at 6373 San Ignacio Avenue, San Jose, California 95119.

incorporates by reference certain provisions of that certain Asset Purchase Agreement, dated as of December 2, 2013, by and among each of the Debtors (also the Borrowers), and the Postpetition Lender, in substantially the form attached hereto as **Exhibit B** (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "**Stalking Horse APA**");[2] (ii) authorizing the Debtors to execute, deliver and enter into the Postpetition Facility and to perform such other and further acts as may be required in connection with the Postpetition Facility; (iii) granting security interests, liens, and superpriority claims (including a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, and priming liens pursuant to section 364(d) of the Bankruptcy Code) to the Postpetition Lender, for the benefit of the Postpetition Lender, to secure all obligations of the Debtors under and with respect to the Postpetition Facility; (iv) authorizing the Debtors' limited use of Cash Collateral (as defined in paragraph E below), solely on the terms and conditions set forth in this Order and in any Postpetition Loan Documents (as defined in paragraph 2); (e) granting adequate protection to the Prepetition Secured Lenders (as defined in paragraph D.7 below) and to the Prepetition Subordinate Debenture Creditors (as defined in paragraph D.6 below), whose liens and security interests are being primed by the Postpetition Facility, as more fully set forth in this Order; and (v) modifying the automatic stay imposed under section 362 of the Bankruptcy Code; (b) requesting, pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the applicable Local Bankruptcy Rules of this Court, that an emergency interim hearing (the "**Interim Hearing**") on the Motion be held before this Court to consider entry of this Order, which authorizes the Debtors to borrow under any Postpetition Loan Documents, on an interim basis, up to an aggregate principal amount not to exceed $21,000,000 (which borrowing, as a condition to the effectiveness of this Interim Order, shall include the Prepetition Senior Loan

---

[2]      Capitalized terms used but not defined herein shall have the meaning assigned to such terms in the Stalking Horse APA.

01:14557328.1

Paydown (as defined in paragraph H below) to be paid to the Prepetition Senior Lender (as defined in paragraph D.1 below) on account of a portion of the Debtors' obligations under the Prepetition Senior Loans (as defined in paragraph D.5 below); and (c) requesting, pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the applicable Local Bankruptcy Rules of this Court, that this Court (i) schedule a final hearing (the "**Final Hearing**") on the Motion as set forth in paragraph 34 below to consider entry of the Final Order authorizing the balance of the borrowings and letter of credit issuances under any Postpetition Loan Documents on a final basis, and (ii) approve notice procedures with respect thereto; and the Interim Hearing having been held before this Court on December 4, 2013; and this Court having considered the Motion and all pleadings related thereto, including the record made by the Debtors at the Interim Hearing; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THIS COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**[3]

A.    <u>Commencement of Cases</u>.  On December 2, 2013 (the "**Petition Date**"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner, and no creditors' committee (the "**Creditors' Committee**") has yet been appointed in the Chapter 11 Cases.

B.    <u>Jurisdiction; Venue</u>.  This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Rules

---

[3]    Pursuant to Bankruptcy Rule 7052, any findings of fact contained herein that may be construed as matters of law shall be treated as conclusions of law as if set forth below, and vice versa.

01:14557328.1

2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure. Venue of the Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

        C.      <u>Adequate Notice</u>. On December 2, 2013, the Debtors filed the Motion with this Court and pursuant to Bankruptcy Rules 2002, 4001 and 9014, and the Local Bankruptcy Rules of this Court, the Debtors have provided notice of the Motion and the Interim Hearing by electronic mail, facsimile, hand delivery or overnight delivery to the following parties and/or to their counsel as indicated: (i) the Office of the United States Trustee for this District (the "**U.S. Trustee**"); (ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iii) counsel to the Postpetition Lender; (iv) counsel to the Prepetition Senior Lender (as defined in <u>paragraph D.1</u> below); (v) counsel to the Prepetition Subordinate Debenture Collateral Agent (as defined in <u>paragraph D.7</u> below); (vi) all other known parties with liens of record on assets of the Debtors as of the Petition Date; (vii) all financial institutions at which the Debtors maintain deposit accounts; (viii) the landlords for all non-residential real properties occupied by the Debtors as of the Petition Date; (ix) the local office for the Internal Revenue Service; and (ix) all other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001 or 9014 or requesting to receive notice prior to the date hereof (collectively, the "**Notice Parties**").

        D.      <u>Prepetition Loan Documents, Liens and Claims</u>.

        (a)      Without prejudice to the rights of any other party, but subject to the provisions of <u>paragraph 30</u> of this Order, the Debtors admit, stipulate and agree that, on and as of the Petition Date, the Debtors were indebted and bound as described below:

**Prepetition Senior Lender**

        1.      Pursuant to that certain Loan and Security Agreement dated as of March 11, 2013 (as amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Senior Credit Agreement**"), among the Debtors and Hercules Technology Growth Capital, Inc., as prepetition lender thereunder (collectively, the "**Prepetition Senior Lender**"), the Prepetition Senior Lender agreed to extend loans and other accommodations to the Borrowers. The Prepetition Senior Credit Agreement, along with any other agreements and

documents executed or delivered in connection therewith, including, without limitation, the "Loan Documents" as defined therein, are collectively referred to herein as the "**Prepetition Senior Loan Documents**" (as the same may be amended, restated, supplemented or otherwise modified from time to time). All obligations of the Debtors arising under the Prepetition Senior Credit Agreement (including, without limitation, the "Secured Obligations" as defined therein) or any other Prepetition Senior Loan Document shall collectively be referred to herein as the "**Prepetition Senior Obligations**."

2.       Pursuant to the Prepetition Senior Loan Documents, by and between each of the Debtors and the Prepetition Senior Lender, each Debtor granted to the Prepetition Senior Lender, to secure the Prepetition Senior Obligations, a first priority security interest in and continuing lien (the "**Prepetition Senior Liens**") on substantially all of such Debtor's assets and property, and all proceeds, products, accessions, rents and profits thereof, in each case whether then owned or existing or thereafter acquired or arising. All collateral granted or pledged by the Debtors pursuant to any Prepetition Senior Loan Document or any other Prepetition Senior Loan Document, including, without limitation, the "Collateral" as defined in the Prepetition Senior Credit Agreement, and all pre-petition and post-petition proceeds thereof shall collectively be referred to herein as the "**Prepetition Senior Collateral**".

3.       (i) All Prepetition Senior Loan Documents executed and delivered by the Debtors to the Prepetition Senior Lender are valid and enforceable by the Prepetition Senior Lender against each of the Debtors; (ii) the Prepetition Senior Liens constitute valid, binding, enforceable and perfected first priority liens and security interests in and on the Prepetition Senior Collateral, subject only to the Prior Liens (as defined below in this paragraph) and are not subject to avoidance, reduction, disallowance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens are subordinated to the Postpetition Liens and the Carve-Out (each term as hereinafter defined) in accordance with the provisions of this Order); (iii) the Prepetition Senior Obligations constitute legal, valid and binding obligations of each of the Debtors, (iv) no offsets, defenses or counterclaims to the Prepetition Senior Obligations exist, and (v) no portion of the Prepetition Senior Obligations, or any amounts previously paid to Prepetition Senior Lender on account of or with respect the Prepetition Senior Obligations, are subject to avoidance, reduction, disgorgement, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

4.       The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Senior Lender with respect to the Prepetition Senior Credit Agreement or any other Prepetition Senior Loan Documents, or any act or omission by the Prepetition Senior Lender prior to the Petition Date, whether arising at law or at equity, including, without limitation, any re-characterization, subordination, avoidance or other debtor claims arising under or pursuant to sections 105, 510 or 542 through 553, inclusive, of the Bankruptcy Code or under applicable non-bankruptcy law.

5.       As of November 25, 2013, the Debtors were truly and justly indebted to the Prepetition Senior Lender pursuant to the Prepetition Senior Loan Documents, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $9,716,963.50 (prior to the application of cash collateral received by the Prepetition Senior Lender from on and after November 25, 2013 to on or before the Petition Date) in respect of

"Loans" (as defined in the Prepetition Senior Credit Agreement) (the "**Prepetition Senior Loans**"), plus all accrued and, subject to section 506(b) of the Bankruptcy Code, hereafter accruing and unpaid interest thereon and any additional fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition Senior Loan Documents, including the Prepayment Charge, Back End Fee and all other charges and fees set forth (and as defined) in the Prepetition Senior Credit Agreement, all of which are stipulated by the Debtor to be allowed, valid and enforceable) now or hereafter due under the Prepetition Senior Credit Agreement and the other Prepetition Senior Loan Documents. In addition, as of the Petition Date, the Debtors were truly and justly indebted to the Prepetition Senior Lender pursuant to the Prepetition Senior Loan Documents, without defense, counterclaim or offset of any kind, in the aggregate amount of not less than $6,500,000 (the "**Subordinated Prepetition Senior Lender Amount**"), which amount is secured pursuant to the Prepetition Senior Loan Documents and included in the Prepetition Senior Liens, but is subordinate to the Prepetition Subordinate Debenture Obligations (as defined in paragraph 7 below), pursuant to those certain Subordination Agreements dated on or about August 12, 2013 (the "**Prepetition Subordination Agreements**") by and between the Prepetition Senior Lender and the Prepetition Subordinate Debenture Creditors (as defined in sub-paragraph 6 below). The Debtors further stipulate that the Subordinated Prepetition Senior Lender Amount is secured by validly perfected, enforceable and non-avoidable liens and security interests in substantially all of the Debtors' assets (subject to allowance of such liens under Section 506(a) of the Bankruptcy Code).

### Prepetition Subordinate Debenture Collateral Agent and Prepetition Subordinate Debenture Creditors

6.      Pursuant to that certain 9% Senior Secured Convertible Debentures due August 13, 2014 and the guarantees thereof (as amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Subordinate Debentures**"), among each Borrowers, the guarantors thereof, and the purchasers of such Prepetition Subordinate Debentures (collectively, the "**Prepetition Subordinate Debenture Creditors**" and, together with the Prepetition Senior Lender, the "**Prepetition Secured Lenders**"), the Prepetition Subordinate Debenture Creditors provided financing to the Debtors in an aggregate principal amount of $13,098,500. The Prepetition Subordinate Debentures, along with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the Subordination Agreement and that certain Security Agreement, dated as of August 12, 2013 (as amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Subordinate Debenture Security Agreement**"), among OCZ, the other Debtors as guarantors and Collateral Agents, LLC, as collateral agent (the "**Prepetition Subordinate Debenture Collateral Agent**") for the Prepetition Subordinate Debenture Creditors, are collectively referred to herein as the "**Prepetition Subordinate Debenture Documents**" (as the same may be amended, restated, supplemented or otherwise modified from time to time).

7.      All obligations of the Debtors arising under the Prepetition Subordinate Debentures or any other Prepetition Subordinate Debenture Document shall collectively be referred to herein as the "**Prepetition Subordinate Debenture Obligations**."

8.     Pursuant to the Prepetition Subordinate Debenture Documents, including the Prepetition Subordinate Debenture Security Agreement and the Prepetition Subordination Agreements (as such documents are amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Junior Collateral Documents**"), each Debtor granted to the Prepetition Subordinate Debenture Collateral Agent, for the benefit of itself and the Prepetition Subordinate Debenture Creditors, to secure the Prepetition Subordinate Debenture Obligations, a second priority security interest in and continuing lien (the "**Prepetition Subordinate Liens**") in the Prepetition Senior Collateral.  The Prepetition Subordinate Liens are junior in priority and in all respects to the Prepetition Senior Liens.

9.     (i) All Prepetition Subordinate Debenture Documents executed and delivered by the Debtors to the Prepetition Subordinate Debenture Creditors and the Prepetition Subordinated Debenture Collateral Agent are valid and enforceable by the Prepetition Subordinate Debenture Creditors and the Prepetition Subordinated Debenture Collateral Agent against each of the Debtors; (ii) the Prepetition Subordinate Liens constitute valid, binding, enforceable and perfected second priority liens and security interests in and on the Prepetition Senior Collateral, subject only to the Prior Liens (as defined in sub-paragraph (c) below) and the Prepetition Senior Liens to the extent provided in the Prepetition Subordination Agreements and are not subject to avoidance, reduction, disallowance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens are subordinated to the Postpetition Liens and the Carve-Out (each term as hereinafter defined) in accordance with the provisions of this Order; (iii) the Prepetition Subordinate Debenture Obligations constitute legal, valid and binding obligations of each of the Debtors, (iv) no offsets, defenses or counterclaims to the Prepetition Subordinate Debenture Obligations exist, and (v) subject to the terms of the Prepetition Subordination Agreements, no portion of the Prepetition Subordinate Debenture Obligations, or any amounts previously paid to Prepetition Subordinate Debenture Creditors or the Prepetition Subordinate Debenture Collateral Agent on account of or with respect the Prepetition Subordinate Debenture Obligations, are subject to avoidance, reduction, disgorgement, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

10.     The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Subordinate Debenture Creditors or the Prepetition Subordinate Debenture Collateral Agent with respect to the Prepetition Subordinate Debentures or any other Prepetition Subordinate Debenture Document, or any act or omission by the Prepetition Subordinate Debenture Creditors or the Prepetition Subordinate Debenture Collateral Agent prior to the Petition Date, with respect to the Prepetition Subordinate Debentures whether arising at law or at equity, including, without limitation, any re-characterization, subordination, avoidance or other debtor claims arising under or pursuant to sections 105, 510 or 542 through 553, inclusive, of the Bankruptcy Code or under applicable non-bankruptcy law.

11.     As of the Petition Date, the Debtors were truly and justly indebted to the Prepetition Subordinate Debenture Collateral Agent and Prepetition Subordinate Debenture Creditors pursuant to the Prepetition Subordinate Debenture Documents, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $13,098,500 in respect of the Prepetition Subordinate Debentures, plus all accrued or, subject to

section 506(b) of the Bankruptcy Code, hereafter accruing and unpaid interest thereon and any additional fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition Subordinate Debenture Documents) now or hereafter due under the Prepetition Subordinate Debentures and the other Prepetition Subordinate Debenture Documents.

(b)     The Debtors irrevocably waive any right to challenge or contest the Prepetition Senior Liens, any other senior or subordinate liens or claims of the Prepetition Senior Lender, including the Subordinated Prepetition Senior Lender Amount, and Prepetition Subordinate Liens and the validity and avoidability of the Prepetition Senior Obligations, the Subordinated Prepetition Senior Lender Amount, and Prepetition Subordinate Debenture Obligations; provided that, subject to paragraph 29 of this Order and the provisions of paragraph 30 of this Order, none of the foregoing acknowledgments or agreements by the Debtors contained in this paragraph D shall be binding on any other party and shall not affect the rights of any committee, Person or entity (other than the Debtors) with respect to their rights to assert, pursue or otherwise allege any of the claims and actions described in paragraph 30 of this Order. Notwithstanding anything in this Order to the contrary, the Debtors and all other parties in interest reserve all of their respective rights (x) as to the value of the Prepetition Senior Collateral and may at any time during the Chapter 11 Cases seek and obtain a determination of this Court under section 506(a) of the Bankruptcy Code that all or any portion of the Prepetition Senior Obligations and/or Prepetition Subordinate Debenture Obligations constitute unsecured deficiency claims and (y) regarding the amount, if any, of the Adequate Protection Senior Obligations (as defined below) and Adequate Protection Junior Obligations (as defined below). In addition, the Debtors irrevocably waive any right to challenge or contest the Special Accommodation Loan (as defined in paragraph F below).

(c)     As used herein, the term "**Prior Liens**" means only valid, enforceable, and non-avoidable liens and security interests in the Prepetition Senior Collateral that were perfected prior to the Petition Date (or perfected on or after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction,

disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which are senior in priority to the Prepetition Senior Liens under applicable law and after giving effect to any subordination or inter-creditor agreements. For the avoidance of doubt, the Prior Liens shall not include, or be deemed to include, any or all of the Prepetition Senior Liens, Adequate Protection Senior Liens (as defined in paragraph 17(a) below), Prepetition Subordinate Liens and/or Adequate Protection Junior Liens (as defined in paragraph 18(a) below), all of which liens are being primed by the Postpetition Liens as set forth herein.

   E. Cash Collateral. For purposes of this Order, the term "**Cash Collateral**" shall mean and include all "cash collateral" as defined by section 363(a) of the Bankruptcy Code and shall include and consist of, without limitation, all of the respective cash proceeds of the Postpetition Collateral (as defined below in paragraph 9 of this Order) and Prepetition Senior Collateral in which any of the Postpetition Lender, the Prepetition Senior Lender, the Prepetition Subordinate Debenture Collateral Agent, or the Prepetition Subordinate Debenture Creditors has an interest (including, without limitation, any adequate protection lien or security interest), whether such interest existed as of the Petition Date or arises thereafter pursuant to this Order, any other order of this Court, applicable law or otherwise.

   F. Exigent Circumstances. The Debtors have an immediate and critical need to obtain post-petition financing under the Postpetition Facility and to use Cash Collateral in order to, among other things, finance the ordinary costs of their operations, maintain business relationships with vendors, suppliers and customers, make payroll, make capital expenditures, and satisfy other working capital and operational needs and repay to the Prepetition Senior Lender, as a condition to the effectiveness of this Order, in partial satisfaction of the Prepetition Senior Loans, an amount equal to (i) $9,716,963.50, which represents the unpaid principal balance of the Prepetition Senior Loans as of November 25, 2013, *minus* (ii) any and all amounts received by the Prepetition Senior Lender on and after November 25, 2013 and on or before the Petition Date (including, without limitation, all amounts received from the deposit accounts of

any Debtor) *minus* (iii) $1,000,000 (collectively, the "**Prepetition Senior Loan Paydown**"), which, shall be paid in full by the Postpetition Lender on behalf of the Debtors out of the initial advance of proceeds under the Postpetition Facility upon entry of this Order (subject to paragraph 29 of this Order and the provisions of paragraph 30 of this Order), and which, in addition to other rights afforded to the Prepetition Secured Lenders herein, was required in order to obtain the Prepetition Secured Lenders' consent to the priming financing sought by the Motion and the use of the Prepetition Secured Lenders' Cash Collateral, as well as their forbearance from exercising remedies against the Debtors arising on account of events of default existing under the Prepetition Senior Loan Documents as of the Petition Date.  The Prepetition Senior Loan Paydown shall be irrevocable and indefeasible, subject only to the timely exercise of a challenge in accordance with paragraph 30 of this Order.  The Debtors' access to sufficient working capital and liquidity through the incurrence of post-petition financing under the Postpetition Facility and the use of Cash Collateral under the terms of this Order is vital to the preservation and maintenance of the going concern value of the Debtors' estates.  Consequently, without access to the Postpetition Facility and the use of Cash Collateral, to the extent authorized pursuant to this Order, the Debtors and their estates would suffer immediate and irreparable harm.  In addition, prior to the Petition Date, pursuant to that certain Promissory Note dated November 29, 2013 by and between OCZ and its subsidiaries party thereto in favor of Toshiba America Electronic Components, Inc. (in its capacity as such, the "**Special Accommodation Lender**"), the Special Accommodation Lender extended a loan to the Debtors in an amount equal to $325,000 (the "**Special Accommodation Loan**"), which, at the direction of the Debtors, was funded directly to counsel to the Debtors to facilitate the preparation and filing of the Debtors' Chapter 11 Cases, avoiding the immediate and irreparable harm to the Debtors' going concern value expected to result from a chapter 7 filing.

      G.     No Alternative Sources of Funding.  The use of Cash Collateral alone would be insufficient to meet the Debtors' post-petition liquidity needs.  Given the Debtors'

current financial condition and capital structure, the Debtors have attempted but are unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) under section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of their estates under section 364(c)(2) of the Bankruptcy Code and (y) a junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code, from sources other than the Postpetition Lender on terms more favorable than the terms of the Postpetition Facility. The only source of secured credit available to the Debtors, other than the use of Cash Collateral, is the Postpetition Facility. The Debtors require both additional financing under the Postpetition Facility and the use of Cash Collateral under the terms of this Order in order to satisfy their post-petition liquidity needs. After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by the Postpetition Lender pursuant to the terms of this Order and any Postpetition Loan Documents represents the best financing presently available to the Debtors. In addition, prior to the Petition Date, the Special Accommodation Loan was the only source of funds available to enable the Debtors to prepare for an organized bankruptcy process and commence the Chapter 11 Cases.

      H.     <u>Willingness of Postpetition Lender</u>. The Postpetition Lender has indicated a willingness to provide the Debtors with certain financing commitments, but solely on the terms and conditions set forth in this Order and in any Postpetition Loan Documents, including the requirement that the Special Accommodation Loan be repaid out of the proceeds of any sale of the Debtors' assets, as set forth in <u>paragraph 37</u> below.

      I.     <u>Limited Consent</u>. The consent of the Prepetition Senior Lender to the priming of their liens by the Postpetition Liens is limited to the Postpetition Facility presently before this Court, and shall not, and shall not be deemed to, extend to any other post-petition financing or to any modified version of this Postpetition Facility with any other party.

Furthermore, the consent of the Prepetition Senior Lender to the Debtors' use of Cash Collateral and the priming of its liens by the Postpetition Liens as provided in this Order does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Senior Lender that its interests in the Prepetition Senior Collateral are adequately protected pursuant to this Order or otherwise.   Nothing in this Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Prepetition Senior Lender are or will be adequately protected with respect to any non-consensual use of Cash Collateral or non-consensual priming of the Prepetition Senior Liens.

J.      Section 364(d) Finding.  The security interests and liens granted pursuant to this Order to the Postpetition Lender is appropriate under section 364(d) of the Bankruptcy Code because, among other things: (i) such security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in any property of the Debtors' estates, and/or (ii) the holders of such security interests and liens have consented (or are deemed to have consented) to the security interests and priming liens granted pursuant to this Order to the Postpetition Lender.

K.      Prepetition Subordination Agreements.   Pursuant and subject to the Prepetition Subordination Agreements, by and between the Debtors, the Prepetition Senior Lender and the Prepetition Subordinate Debenture Creditors, the Prepetition Subordinate Debenture Creditors have agreed: (i) to subordinate their liens in the Prepetition Senior Collateral to the Postpetition Liens and the Adequate Protection Senior Liens, and (ii) that they will not request adequate protection or any other relief in connection with the Debtors' entry into the Postpetition Facility or their use of Cash Collateral, except as expressly agreed to by the Prepetition Senior Lender or to the extent permitted under Prepetition Subordination Agreements.

L.    <u>Good Cause Shown</u>.  Good cause has been shown for immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and such relief is in the best interest of the Debtors, their estates and creditors.  In particular, the authorizations granted herein for the Debtors to execute any Postpetition Loan Documents, to use the Cash Collateral, and to obtain interim financing, including on a priming lien basis, and to require the repayment of the Special Accommodation Loan pursuant to <u>paragraph 37</u> below, are necessary to avoid immediate and irreparable harm to the Debtors and their estates, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

M.    <u>Section 364(e); Good Faith</u>.  The Postpetition Facility, Postpetition Loan Documents, repayment of the Special Accommodation Loan pursuant to <u>paragraph 37</u>, use of Cash Collateral, and provision of adequate protection contained herein have been negotiated in good faith and at arm's-length among the Debtors, the Postpetition Lender and the Prepetition Senior Lender.  Accordingly, any credit extended and loans made to (as well as the Special Accommodation Loan), Cash Collateral used by, and adequate protection provided by the Debtors pursuant to this Order shall be, and hereby are, deemed to have been extended, issued, made, used or provided, as the case may be, in "good faith" as required by, and within the meaning of, section 364(e) of the Bankruptcy Code.

N.    <u>Budget for Postpetition Financing</u>.  Attached hereto as <u>Exhibit A</u> is a budget that assumes a going concern sale of the Debtors' assets in accordance with the Stalking Horse APA setting forth all projected cash receipts, sales and cash disbursements (by line item) on a weekly basis for the time period from and including December 2, 2013 to January 31, 2014 (the "**Initial Approved Budget**").  The Initial Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by Debtors and approved by the Postpetition Lender in writing in its sole discretion, without subsequent notice to or order of the

01:14557328.1

Court (each such additional budget, a "**Supplemental Approved Budget**"). The aggregate, without duplication, of all items approved by the Postpetition Lender in the Initial Approved Budget and any and all Supplemental Approved Budgets shall constitute an "**Approved Budget**." The Initial Approved Budget is an integral part of this Order and has been relied upon by the Postpetition Lender in deciding to agree to this Order and provide the Postpetition Facility and the Prepetition Secured Lenders to permit use of Cash Collateral. The Debtors represent and warrant to the Postpetition Lender and this Court that (i) the Initial Approved Budget includes and contains the Debtors' best estimate of all operational disbursements, fees, costs and other expenses that will be payable, incurred and/or accrued by any of the Debtors during the period covered by the Initial Approved Budget and that such operational disbursements, fees, costs and other expenses will be timely paid in the ordinary course of business unless such operational disbursements, fees, costs and other expenses are not incurred or otherwise payable, and (ii) the amounts in the Initial Approved Budget are in the Debtors' best estimate and judgment sufficient to proceed with a prompt, proper and orderly sale of the Debtors' assets.

Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    Motion Granted. The Motion is approved on an interim basis on the terms and conditions set forth in this Order. This Order shall become effective immediately upon its entry. To the extent any provisions in this Order conflict with any provisions of any Postpetition Loan Documents, the provisions of this Order shall control and govern to the extent of such conflict. All objections to the entry of this Order have been withdrawn or overruled.

2.    Postpetition Loan Documents. The terms and conditions of the Postpetition Facility are hereby approved pursuant to this Order. To the extent requested by the Postpetition Lender, the Debtors ~~are hereby authorized~~ May file a Motion to enter into and deliver such additional

documents, instruments, notes and agreements that are consistent with the terms of this Order as may be reasonably required by the Postpetition Lender to implement the terms or effectuate the purposes of this Order (as such additional credit agreements, documents, instruments, notes and agreements may be amended, restated, supplemented or otherwise modified from time to time, the "**Postpetition Loan Documents**") ~~which shall be effective following the notice and filing~~ ~~requirements set forth in this paragraph. Any Postpetition Loan Document entered into by the Debtors shall be filed with this Court and provided to counsel to the Creditors' Committee, counsel to the U.S. Trustee, and counsel to the Prepetition Senior Lender each of whom shall have five (5) business days from the date of receiving such Postpetition Loan Document within which to object in writing to such Postpetition Loan Document. If no such objection is filed, the Debtors shall file a Certification of Counsel with the Postpetition Loan Documents attached for the Court to consider.~~  Each Borrower is hereby authorized to borrow money ~~under the Postpetition Facility,~~ in accordance with the terms of this Order. ~~Upon execution and delivery~~ of ~~any such Postpetition Loan Documents by any Borrower, and subject to the five (5) business~~ day ~~notice period and Certification of Counsel procedure provided above, this Order~~ shall ~~be deemed to incorporate such Postpetition Loan Documents by reference as part of this Order and~~ shall ~~constitute valid and binding obligations of the Debtors, enforceable against each Debtor~~ party ~~thereto (and its respective estate, successor and assigns) in accordance with the terms thereof.~~ The Postpetition Lender may from time to time impose reserves against the amounts available to be borrowed under the Postpetition Facility as Postpetition Lender deems necessary or appropriate in accordance with its reasonable credit judgment, including, without limitation, a reserve for the Carve-Out (as defined in paragraph 13 below). ~~To the extent there are any conflicts or inconsistencies between the terms of this Order and any Postpetition Loan Document, the terms of this Order shall control and govern.~~

       3.    <u>Amendments</u>. The Debtors are hereby authorized, without further notice, motion or application to, order of, or hearing before, this Court, to enter into agreements with the

Postpetition Lender providing for any non-material modifications to the Approved Budget (as defined in paragraph N above) or any Postpetition Loan Documents; provided, however, that notice of any material modification or amendment to the Approved Budget or any Postpetition Loan Documents shall be provided to counsel to the Creditors' Committee (and any subsequent trustee of the Debtors' estates), counsel to the U.S. Trustee and counsel to the Prepetition Senior Lender, each of whom shall have five (5) business days from the date of such notice within which to object in writing to such modification or amendment. If the Creditors' Committee (or any subsequent trustee of the Debtors' estates), the U.S. Trustee or the Prepetition Senior Lender timely objects to any material modification or amendment to the Approved Budget or any Postpetition Loan Document, then such modification or amendment shall only be permitted pursuant to an order of this Court.

    4.   Permitted Use.

    a.   Generally. Notwithstanding anything in this Order to the contrary, the Debtors may use the Cash Collateral and proceeds of the Postpetition Facility, obtain and incur Postpetition Obligations solely in accordance with and pursuant to the financial covenants, availability formulae, and other terms and conditions set forth in any Postpetition Loan Documents and this Order, including, without limitation, pursuant to the Approved Budget, in all events only until the occurrence of the Termination Date (as defined below in paragraph 34 below). Notwithstanding the foregoing, but subject to the Maximum Amount (as defined in paragraph 7 below), if the Postpetition Lender in its sole discretion advances funds or provide other extensions of credit to the Debtors notwithstanding the financial covenants, availability formulae, or other terms or conditions set forth in any Postpetition Loan Documents or this Order, including, without limitation, pursuant to the Approved Budget, such advances and other extensions of credit shall constitute Postpetition Obligations entitled to the rights, priorities, benefits and protections of the Postpetition Facility under this Order. To the extent permitted under any Postpetition Loan Documents and any Approved Budget, the Debtors may use

01:14557328.1

-16-

proceeds of the Postpetition Facility to purchase from Toshiba (and its affiliates) NAND flash memory for SSD related products, provided that all such purchases shall be paid in advance or cash on delivery (as determined by Toshiba or its applicable affiliate in their respective sole discretion), and otherwise on terms acceptable to Toshiba (or its applicable affiliate) in its sole discretion, including, without limitation, Toshiba's (or its applicable affiliate's) decisions on how to allocate such products among its various customers, which decisions shall be made in Toshiba (or its applicable affiliate's) sole discretion. The Debtors shall not have the right to direct the manner of application of any payments to the Postpetition Lender or any other receipts by the Postpetition Lender of proceeds of any of the Postpetition Collateral.

   b. <u>Prepetition Senior Loan Paydown</u>. The Prepetition Senior Loan Paydown shall be paid in full by the Postpetition Lender on behalf of the Debtors out of the initial advance of proceeds under the Postpetition Facility upon entry of this Order (subject to <u>paragraph 29</u> of this Order and the provisions of <u>paragraph 30</u> of this Order). The payment by the Debtors of such amounts shall not alter or limit any rights and remedies of the Creditors' Committee (or any subsequent trustee of the Debtors' estates) arising under <u>paragraph 30</u> of this Order.

   c. <u>Cash Receipts; Use of Proceeds and Cash Collateral; Reporting; Monitoring; Books and Records; Certain Business Related Covenants</u>.

   (1) <u>Cash Receipts</u>. The Debtors' actual cash receipts during any week covered by the Initial Approved Budget shall not be less than 90% of the amount set forth in the Approved Budget in effect for such week; <u>provided that</u> to the extent the actual amount of cash receipts of the Debtors during any week covered by the Approved Budget exceed 100% of the amounts set forth in the Approved Budget for such week, the Debtors shall be permitted, to the extent that this <u>paragraph 4.c.(1)</u> would otherwise be violated during any following week or weeks of the Approved Budget following such week, to deem such excess cash receipts to have been received during any of such week or weeks without duplication.

   (2) <u>Cash Expenditures</u>. Subject to the terms and conditions set forth below, and except as Postpetition Lender otherwise consents in writing, funds borrowed hereunder and Cash Collateral shall be used by the Debtors solely for the purposes and up to the amounts set forth in the Approved Budget for the applicable line item during the applicable seven-day period:

(a)     For each period beginning on the Petition Date and ending on the last day of each seven-day period set forth in the Approved Budget, the aggregate cumulative expenditures by the Debtors shall not exceed one hundred and ten (110%) of the aggregate cumulative amount budgeted for such cumulative time period pursuant to the Approved Budget.

(b)     The Debtors' expenditures under any line item for any seven-day period shall not exceed the greater of (i) the sum of the budgeted amount for such line item for such seven-day period plus any excess of the cumulative amounts budgeted for such line item during the periods elapsed since the Petition Date over the cumulative amount of Debtors' actual expenditures under such line item for such prior time period and (ii) one hundred and ten (110%) of the budgeted amount for such line item for such seven-day period.

(c)     To the extent any additional line item is added to the Approved Budget in accordance with the provisions of this Order, such line items shall be subject to such variance provisions as the Debtors and Postpetition Lender may mutually agree in writing in their respective sole discretion.

(d)     Any unused portion of any line item in the Approved Budget may be carried forward (but not carried backward) to the same line item for any subsequent seven-day period in the Approved Budget.  The unused portion of any line item may not be carried over to any other line item.

(3)     Aggregate   Variance;   Payments   Under   Budget. Notwithstanding the expenditure variances permitted by subparagraphs (a) through (d) above, the aggregate cumulative expenditures by the Debtors shall not exceed one hundred percent (100%) of the aggregate amount budgeted for the entire period covered by the Initial Approved Budget (provided that nothing herein shall be deemed to require the Postpetition Lender to advance funds in excess of the Maximum Amount under the Postpetition Facility or this Order).  The Debtors shall use their best efforts to minimize the prepayment of any expense listed in the Approved Budget and shall make such prepayments only to the extent required by their vendors. The proceeds of any loans or any extensions of credit made by the Postpetition Lender to the Debtors pursuant to this Order and all proceeds of the Postpetition Collateral and Cash Collateral shall be used only as follows:  (i) prior to the Termination Date, solely for the payment of the expenses set forth in the Approved Budget (subject to the limitations and exceptions set forth in this paragraph), including, without limitation, any incurred and/or accrued fees and expenses of the Retained Professionals set forth in the Approved Budget (to the extent permitted by order of the Court); and (ii) on or after the Termination Date, first, for the payment of any amounts constituting any part of the Carve-Out (as defined below) up to an aggregate amount not to exceed the unused portion of the Carve-Out, second, for the payment of the Postpetition Obligations, and third, for payment of any actually incurred but unpaid expenses under the Approved Budget existing as of the Termination Date.

(4)     Delivery of Weekly Variance Reports.  The Debtors shall, on the fourth business day of each week, deliver to the Postpetition Lender (i) a report showing actual cash receipts and actual expenditures for each line item in the Approved Budget covering the previous week and comparing the foregoing amounts with the budgeted cash receipts and

budgeted expenditures, respectively, set forth in the Approved Budget for such line item during such week, and (ii) a certificate of a responsible officer of Debtors in form and substance satisfactory to the Postpetition Lender certifying that the Debtors are in compliance with the requirements of the Approved Budget, this Order and any Postpetition Loan Documents, and that no budget default has occurred or is continuing.

(5)    <u>Delivery of Other Reports</u>.  The Debtors shall deliver to the Postpetition Lender:

(a)    copies of all monthly reports, projections, or other information respecting the Borrowers' or any subsidiary of the Borrowers' business or financial condition or prospects as well as all pleadings, motions, applications and judicial information filed by or on behalf of the Borrowers with the Court or provided by or to the U.S. Trustee (or any monitor or interim receiver, if any, appointed in any Chapter 11 Case) or the Creditors' Committee, at the time such document is filed with the Court, or provided by or, to the U.S. Trustee (or any monitor or interim receiver, if any, appointed in any Chapter 11 Case) or the Creditors' Committee;

(b)    with reasonable promptness, such other information and data with respect to any Borrower or any subsidiary of any Borrower as from time to time may be reasonably requested by the Postpetition Lender;

(c)    promptly upon any officer of any Borrower obtaining knowledge of any of the following events or conditions, copies of all notices given or received by such Borrower or any of its subsidiaries with respect to any such event or condition and a certificate of Borrower Representative's chief executive officer or chief financial officer specifying the nature and period of existence of such event or condition and what action or actions Borrowers or any of their subsidiaries have taken, are taking and propose to take with respect thereto:  (1) any condition or event that constitutes, or which could reasonably be expected to result in the occurrence of, the Termination Date; (2) any event or condition that could reasonably be expected to result in any material adverse effect on any Borrower or any subsidiary of any Borrower; or (3) any material default or event of default with respect to any indebtedness or other obligations of any Borrower or any subsidiary of any Borrower; and

(d)    promptly upon any officer of any Borrower obtaining knowledge of (1) the institution of any action, charge, claim, demand, suit, proceeding, petition, governmental investigation, tax audit or arbitration now pending or, to the best knowledge of such Borrower, threatened against or affecting any Borrower or any subsidiary of any Borrower or any property of any Borrower or any subsidiary of any Borrower not previously disclosed by the Borrower Representative to the Postpetition Lender or (2) any material development in any action, suit, proceeding, governmental investigation or arbitration at any time pending against or affecting any Borrower or any property of any Borrower which, in each case, could reasonably be expected to have a material adverse effect, notice thereof to the Postpetition Lender and such other information as may be reasonably available to them to enable the Postpetition Lender and its counsel to evaluate such matter.

(6)    Monitoring.  The Postpetition Lender may assume that the Debtors will comply with the terms and conditions of this Order, including, without limitation, the Approved Budget and the Postpetition Lender shall have no duty to monitor or ensure such compliance.  The Postpetition Lender shall not be obligated to pay (directly or indirectly from the Postpetition Facility or Postpetition Collateral) any unpaid expenses of the Debtors, whether or not incurred or authorized to be incurred pursuant to the Approved Budget.  The Debtors acknowledge and agree that the line items in the Approved Budget for payment of interest, expenses and other amounts to the Postpetition Lender are estimates only, and that they remain obligated to pay any and all Postpetition Obligations in accordance with the terms of this Order and any Postpetition Loan Documents.

(7)    Books and Records; Management Rights.  Each Borrower shall keep adequate books and records with respect to its business activities in which proper entries, reflecting all financial transactions, are made in accordance with GAAP and on a basis consistent with the financial statements previously delivered to the Postpetition Lender.  The Borrowers shall permit any representative that the Postpetition Lender authorizes, including its attorneys and accountants, to inspect the Postpetition Collateral and examine and make copies and abstracts of the books of account and records of the Borrowers at reasonable times and upon reasonable notice during normal business hours.  In addition, any such representative shall have the right to meet with management and officers of the Borrowers to discuss such books of account and records.  In addition, the Postpetition Lender shall be entitled at reasonable times and intervals to consult with and advise the management and officers of the Borrowers concerning significant business issues affecting the Borrowers.  Such consultations shall not unreasonably interfere with the Borrowers' business operations.

(8)    New Subsidiaries; Guarantors.  The Postpetition Facility and Postpetition Obligations shall be deemed guaranteed by all non-Debtor subsidiaries (which as used in this Order refers to both direct and indirect subsidiaries) of the Borrowers.  Without limiting the foregoing, the Borrowers shall notify the Postpetition Lender in writing of the formation of any new subsidiary and concurrently with the formation thereof, such subsidiary shall be deemed a guarantor of the Postpetition Facility and the Postpetition Obligations, and the Debtors shall cause such subsidiary to promptly enter into such joinders or guaranties of the Postpetition Facility and the Postpetition Obligations as the Postpetition Lender may request.

5.    Postpetition Obligations.    For purposes of this Order, the term "**Postpetition Obligations**" shall mean all amounts advanced pursuant to or otherwise owing under or on account of this Order, the Postpetition Facility or any Postpetition Loan Documents, and shall include the principal of, interest on, fees, costs, expenses and other charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees, costs and expenses that are chargeable or reimbursable

hereunder or under any Postpetition Loan Document), and any obligations in respect of indemnity claims, in each case whether contingent or otherwise.

      6.     Interest, Fees, Costs and Expenses, Indemnification.

      a.     The Postpetition Obligations shall bear interest at the rate of nine percent (9%) per annum, payable monthly in arrears on the first day of each month after entry of this Interim Order.  On and after the Termination Date, the applicable interest rate shall automatically increase to eleven percent (11%), without the need for application to or order of the Court.  Interest on amounts borrowed under the Postpetition Facility shall continue to accrue thereon from the date of the advance thereof until indefeasibly paid in full based on a year consisting of 360 days, with interest computed daily based on the actual number of days elapsed.

      b.     The Postpetition Lender shall be entitled to a fee, payable as a condition to the funding of any amounts under the Postpetition Facility or out of the proceeds of the initial funding of the Postpetition Facility, equal to two percent (2%) of the Maximum Amount (including amounts authorized by the Final Order) and the Supplemental Amount (as defined in paragraph 7.a below).

      c.     The Postpetition Lender shall be entitled to, and the Postpetition Obligations shall be deemed to include, any and all fees, costs, and expenses, including the reasonable fees and expenses of the Postpetition Lender's attorneys, financial advisors, accountants and other professional advisors, incurred in connection with the negotiation, documentation, execution, approval of, or exercise of remedies in connection with the Postpetition Facility or the Postpetition Obligations, all advances under the Postpetition Facility, and all actions taken with respect to the foregoing.  Any and all such fees, costs and expenses shall be due and payable (and promptly paid as set forth below), in each case without further notice, motion or application to, order of, or hearing before, this Court.  The Debtors shall pay as promptly as possible and in any event within five (5) days of demand (and solely with respect to such amounts incurred after the Petition Date, following expiration of the 10-day objection period described below) all such fees, costs, expenses and other charges payable under the this Order or the terms of any Postpetition Loan Document, in each case whether or not the Postpetition Facility and transactions contemplated in connection therewith are consummated. None of such fees, costs and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; provided, that, solely with respect to such amounts incurred after the Petition Date, the Postpetition Lender shall submit copies of its professional fee invoices to the Debtors, the U.S. Trustee and counsel for the Creditors' Committee (and any subsequent trustee of the Debtors' estates).  Such invoices may be redacted to the extent the Postpetition Lender deems necessary or appropriate to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine. The U.S. Trustee and the Creditors' Committee (and any subsequent trustee of the Debtors' estates) may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted by the Postpetition Lender; provided that, any such objection

01:14557328.1

-21-

shall be forever waived and barred unless it is filed with this Court and served on counsel to the Postpetition Lender no later than ten (10) days after the objecting party's receipt of the applicable professional fee invoice. Any hearing on an objection to payment of any fees, costs and expenses of the Postpetition Lender set forth in a professional fee invoice shall be limited to the reasonableness or necessity of the particular items of categories of the fees, costs and expenses which are the subject of such objection. All amounts as to which no such objection is filed shall be promptly paid as set forth above. Likewise, any and all fees, costs, and expenses, including reasonably attorneys' fees and financial advisory fees, incurred by the Prepetition Senior Lender in connection with the Prepetition Senior Loan Documents and this bankruptcy proceeding (subject to the cap set forth in paragraph 17.c below) shall be governed by the foregoing provisions of this subparagraph. For purposes of clarity, with respect to all accrued fees and costs of the Prepetition Senior Lender as of the Petition Date, such shall be due and payable, and paid in no more than five (5) days from notice to the Debtors, without further notice, motion or application to, order of, or hearing before, this Court (for avoidance of doubt, subject to the cap set forth in paragraph 17.c below).

        d.     The Borrowers agree to indemnify and hold the Postpetition Lender and its officers, directors, employees, agents, attorneys, representatives and shareholders harmless from and against any and all claims, costs, expenses, damages and liabilities (including such claims, costs, expenses, damages and liabilities based on liability in tort, including strict liability in tort), including reasonable attorneys' fees and disbursements and other costs of investigation or defense (including those incurred upon any appeal), that may be instituted or asserted against or incurred by Postpetition Lender or any such person as the result of, in connection with, or related to credit having been extended, suspended or terminated under the Postpetition Facility, this Order or any Postpetition Loan Documents or the administration of such credit, or in connection with, related to or arising out of the transactions contemplated hereunder and thereunder, or any actions or failures to act in connection therewith, or in connection with, related to or arising out of the disposition or utilization of the Postpetition Collateral, excluding in all cases claims to the extent resulting from the Postpetition Lender's gross negligence or willful misconduct as determined by final order of a court of competent jurisdiction. This indemnity obligation shall survive the Termination Date.

        e.     All unpaid fees, costs, expenses, charges and indemnities that have not been disallowed by this Court on the basis of an objection filed by the U.S. Trustee or the Creditors' Committee (or any subsequent trustee of the Debtors' estates) in accordance with the terms hereof shall constitute Postpetition Obligations and shall be secured by the Postpetition Collateral as specified in this Order.

        7.     <u>Maximum Amount; Borrowings.</u>

        a.     Subject to the terms and conditions set forth in this Order and in any Postpetition Loan Documents, the Debtors may use the proceeds of the Postpetition Facility and the Cash Collateral solely to: (i) pay outstanding Postpetition Obligations as provided in any Postpetition Loan Documents and this Order, (ii) pay the Prepetition Senior Loan Paydown as provided in paragraph 4 above, (iii) make the adequate protection payments required under this Order, and (iv) fund general corporate and working capital requirements of the Debtors constituting administrative expenses in the Chapter 11 Cases, in each case in accordance with the

Approved Budget and the terms of any Postpetition Loan Documents. The aggregate principal amount of loans available under the Postpetition Facility shall not at any time exceed the amount of $23,500,000, which amount is inclusive of the Prepetition Senior Lender Paydown (the "**Maximum Amount**"), without further order of this Court, provided, however, that from and after the entry of this Order and prior to the entry of the Final Order, the Maximum Amount shall be limited to $21,000,000, which amount is inclusive of the Prepetition Senior Lender Paydown; provided, further, that the Maximum Amount may be increased by $1,500,000 (the "**Supplemental Amount**"), in the Postpetition Lender's sole discretion, in the event the Postpetition Lender extends the Maturity Date (as defined in paragraph 34.b below) by fifteen (15) days, which extension shall be in the Postpetition Lender's sole discretion.

        b.      Subject to satisfaction of the Conditions Precedent to Funding (as defined below), the loans available under the Postpetition Facility shall be made to the Debtors in two draws, the first of which shall be in the Maximum Amount authorized by this Order, the second of which shall be the remainder of the Maximum Amount, provided that in the event the Postpetition Lender extends the Maturity Date and the Maximum Amount is increased, in each case pursuant to the terms hereof, a third draw shall be available to the Debtors in the amount of the Supplemental Amount; provided, further, that the funding of all advances under the Postpetition Facility shall be made in accordance with and as required to provide the Borrowers with adequate liquidity to fund the Approved Budget, plus a reasonable, mutually agreed reserve, and to accomplish the foregoing, the Postpetition Lender may, in its sole discretion, elect to fund advances under the Postpetition Facility in a greater number of draws, provided that the aggregate amount of loans made under the Postpetition Facility shall not at any time exceed the Maximum Amount (plus the Supplemental Amount, if applicable). Upon three (3) business days' prior written notice to the Postpetition Lender, the Debtors may prepay all, but not less than all, of the Postpetition Obligations. Notwithstanding anything in this Order to the contrary, once a Postpetition Obligation is paid, repaid, or prepaid, such amounts may not be re-borrowed without the Postpetition Lender's written consent, which may be withheld in the Postpetition Lender's sole discretion.

        8.      <u>Conditions Precedent to Postpetition Loans</u>. Advances of loan proceeds under the Postpetition Facility shall be subject to the following conditions precedent, as applicable (collectively, the "**Conditions Precedent to Funding**").

        a.      <u>Initial Advances</u>. The Postpetition Lender shall not be obligated to make any advances under the Postpetition Facility, or to take, fulfill, or perform any other action hereunder, until the following conditions have been satisfied or provided for in a manner satisfactory to the Postpetition Lender in its sole discretion, or waived in writing by the Postpetition Lender, or if the Termination Date has occurred:

        (1)      This Order shall have been entered in form and substance acceptable to the Postpetition Lender in its sole discretion, by no later than five (5) days after the Petition Date.

(2)　　The Initial Approved Budget shall have been delivered in form and substance acceptable to the Postpetition Lender in its sole discretion, and the Debtors shall be in compliance therewith in accordance with paragraph 4.c above.

(3)　　The Postpetition Lender shall be satisfied with respect to the Borrowers' cash management arrangements then in effect and, if requested by the Postpetition Lender, all of the Borrowers' deposit and other bank accounts shall be subject to deposit account control agreements acceptable to the Postpetition Lender.

(4)　　The Postpetition Lender shall be satisfied in its reasonable discretion with the "first day motions" and related orders (including, without limitation, a critical vendor motion) entered in the Chapter 11 Cases.

(5)　　The Borrowers shall have (i) entered into the Stalking Horse APA with Toshiba on or before the Petition Date and (ii) on the Petition Date filed a motion for (x) approval of the Bidding Procedures (as defined in paragraph 15 below) attached as an exhibit to the Stalking Horse APA and (y) approval of the sale transactions contemplated under the Stalking Horse APA.

　　　　b.　　All Advances. Except as otherwise expressly provided herein, the Postpetition Lender shall not be obligated to fund any amounts under the Postpetition Facility, if, as of the date thereof:

(1)　　(i) The Court shall not have entered the Final Order, substantially in the form of this Order and otherwise acceptable to the Postpetition Lender in its sole discretion, on or before the date that is 30 days after the Petition Date, (ii) this Order or the Final Order shall have been vacated, stayed, reversed, modified or amended without the Postpetition Lender's consent (to be granted or withheld in the Postpetition Lender's sole discretion) or shall otherwise not be in full force and effect, (iii) a motion for reconsideration of any such order shall have been timely filed or (v) an appeal of any such order shall have been timely filed and such order in any respect is the subject of a stay pending appeal.

(2)　　The advance requested would cause the aggregate outstanding amount of the loans under the Postpetition Facility to exceed the Maximum Amount authorized by this Order or the Final Order, as the case may be, or any order modifying, reversing, staying, vacating or amending such order shall have been entered without Postpetition Lender's consent, or any appeal of such order shall have been timely filed.

(3)　　The Termination Date shall have occurred.

(4)　　The Approved Budget shall not have been delivered in form and substance acceptable to the Postpetition Lender in its sole discretion, or the Debtors shall not be in compliance therewith in accordance with paragraph 4.c above.

(5)　　Any Debtor shall have breached any of its obligations under this Order or the Final Order, as the case may be.

01:14557328.1

-24-

(6)    The Court shall not have entered an order approving the Bidding Procedures in form and substance reasonably acceptable to Postpetition Lender within twenty (20) days after the Petition Date, (ii) such order shall have been vacated, stayed, reversed, modified or amended without the Postpetition Lender's consent or shall otherwise not be in full force and effect, (iii) a motion for reconsideration of any such order shall have been timely filed or (iv) an appeal of any such order shall have been timely filed and such order in any respect is the subject of a stay pending appeal;

(7)    Any motions, orders, pleadings or other related documents shall have been filed by the Debtors in the Chapter 11 Cases in connection with the Postpetition Facility that are not satisfactory to the Postpetition Lender; or

(8)    Borrowers shall not have reimbursed the Postpetition Lender for all fees, costs and expenses of the Postpetition Lender's, its counsel, financial advisors and accountants owing as of such date pursuant to the terms of this Order.

9.    <u>Postpetition Liens</u>.  As security for the full and timely payment of the Postpetition Obligations, the Postpetition Lender is hereby granted, pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid, binding, enforceable, unavoidable and fully perfected security interests, liens and mortgages (collectively, the "**Postpetition Liens**") in and upon all pre-petition and post-petition real and personal, tangible and intangible property and assets of each of the Debtors of any kind or nature whatsoever, wherever located, whether now existing or hereafter acquired or arising, including, without limitation, all cash (including all Cash Collateral, wherever held), cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, goods, fixtures, real property interests, intellectual property, general intangibles, investment property, supporting obligations, letter of credit rights, commercial tort claims, one hundred percent (100%) of the capital stock of each Debtor's direct and indirect domestic and foreign subsidiaries, all inter-company notes held by the Debtors, trademarks, trade names, licenses, rights to payment including tax refund claims, and causes of action (exclusive of actions for preferences, fraudulent conveyances, and other avoidance power claims under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (the "**Avoidance Actions**")), but, subject to entry of the Final Order, inclusive of any and all

01:14557328.1

proceeds and recoveries from the Avoidance Actions, and the Prepetition Senior Collateral, and the proceeds, products, offspring, rents and profits of all of the foregoing, including insurance proceeds (all of the foregoing, the "**Postpetition Collateral**").

      10.   <u>Other Priority Matters</u>.  Subject to the Carve-Out, the Postpetition Liens: (a) shall, pursuant to section 364(c)(2) of the Bankruptcy Code, constitute first priority security interests in and liens on all Postpetition Collateral that is not otherwise subject to any Prior Lien; (b) shall, pursuant to section 364(d)(1) of the Bankruptcy Code, be senior to and prime (i) the Prepetition Senior Liens and Prepetition Subordinate Liens, and (ii) the Adequate Protection Senior Liens and Adequate Protection Junior Liens (the liens described in clauses (i) and (ii) above, collectively, the "**Primed Liens**"); and (c) shall, pursuant to section 364(c)(3) of the Bankruptcy Code, be immediately junior in priority to any and all Prior Liens (other than the Primed Liens) on or in the Postpetition Collateral.  Other than the Carve-Out and Prior Liens, the Postpetition Liens shall at all times be senior to the following (collectively, the "**Subordinate Liens and Related Rights**"): (i) the rights of any Debtor and any successor trustee or estate representative in the Chapter 11 Cases or any other subsequent proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 proceeding if any of the Chapter 11 Cases are converted to a case under Chapter 7 of the Bankruptcy Code (collectively, the "**Successor Case**"); (ii) any inter-company claim of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, and (iii) any security interest or lien which is either (x) avoided or otherwise preserved for the benefit of any Debtor's estate under section 551 or any other provision of the Bankruptcy Code, or (y) junior or otherwise subordinate to the Prepetition Senior Liens.   The Postpetition Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment or avoidance, for all purposes in the Chapter 11 Cases and any Successor Case.  Other than the Carve-Out and Prior Liens, no other liens or security interests, whether for adequate protection or otherwise, shall be senior or equal to or <u>pari passu</u> with the Postpetition Liens in these Chapter 11 Cases or any

01:14557328.1

Successor Case without the express written consent of the Postpetition Lender (which consent may be withheld in its sole discretion). Notwithstanding anything herein to the contrary, all parties retain and reserve all their rights to dispute the validity, priority, enforceability and perfection of the Prior Liens.

11.    Super-Priority Claim.    In addition to the Postpetition Liens, the Postpetition Lender is hereby granted, for all Postpetition Obligations, an allowed super-priority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code (the "**Super-Priority Claim**") against each Debtor and its respective estate. Except for the Carve-Out, the Super-Priority Claim shall have priority over all other costs and expenses of administration of any kind (and no cost or expense of administration shall be senior to, equal to, or pari passu with, the Super-Priority Claim), including those specified in, or ordered pursuant to, sections 105, 326, *506(c) (subject to the entry of the Final Order)* 328, 330, 331, 363, 364, 503, 506, 507, 546, 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise (whether incurred in these Chapter 11 Cases or any Successor Case, whether for adequate protection, the lack of, or failure to provide, adequate protection, or otherwise, including, without limitation, the Adequate Protection Senior Claims and Adequate Protection Junior Claims). The Super-Priority Claim shall at all times be senior to the following (collectively, the "**Subordinate Claims and Related Rights**"): (i) the rights of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, (ii) any successor trustee or estate representative in the Chapter 11 Cases or any Successor Case, or (iii) except for the Carve-Out, any other creditor or party in interest in the Chapter 11 Cases or any Successor Case.

12.    No Reduction or Impairment.    No obligation or liability owed, or payment, transfer or grant of security, to the Postpetition Lender under this Order or any other Postpetition Loan Document shall be stayed, restrained, voidable, impaired, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or be subject to

any defense, reduction, setoff, recoupment or counterclaim, whether in the Chapter 11 Cases or any Successor Case. The Postpetition Obligations, once paid by any Debtor to the Postpetition Lender, shall be non-refundable.

13.    Carve-Out.

a.    Generally.  Notwithstanding anything to the contrary contained in this Order, upon the occurrence of the Carve-Out Trigger Date (as defined below), the liens and claims granted to any of the Postpetition Lender, the Prepetition Senior Lender, or the Prepetition Subordinate Debenture Collateral Agent, in this Order, any Postpetition Loan Documents, the Prepetition Senior Loan Documents and/or the Prepetition Subordinate Debenture Documents shall be subject to the payment, without duplication, of the following fees and claims (collectively, the "**Carve-Out**"), but only to the extent (after application of all retainers) that there are not sufficient, unencumbered funds in the Debtors' estates to pay such amounts at the time payment is required to be made:

(i)    with respect to claims incurred prior to the Carve-Out Trigger Date, the claims of (x) professionals of the Debtors whose retention is approved by this Court during the Chapter 11 Cases pursuant to sections 327 and 328 of the Bankruptcy Code (the "**Debtors' Professionals**") for unpaid fees and expenses (after application of all retainers) that were incurred on and after the Petition Date and prior to the Carve-Out Trigger Date in the Chapter 11 Cases; and (y) professionals of any statutory committees appointed in the Chapter 11 Cases (or any subsequent trustee of the Debtors' estates) whose retention is approved by this Court during the Chapter 11 Cases pursuant to section 1103 of the Bankruptcy Code (the "**Committee's Professionals**" and together with the Debtors' Professionals, the "**Retained Professionals**") for unpaid fees and expenses (after application of all retainers) that were incurred on and after the Petition Date and prior to the Carve-Out Trigger Date in the Chapter 11 Cases; provided that, in each case, such fees and expenses of the Retained Professionals are ultimately allowed on a final basis by this Court under sections 330 and 331 of the Bankruptcy Code and are not excluded from the Carve-Out under paragraph 29 of this Order (such fees and expenses, the "**Pre-Carve-Out Trigger Date Expenses**" and the permitted amount thereof, the "**Pre-Carve-Out Trigger Date Amount**") and, with respect to the liens and claims held or granted to any of the Postpetition Lender or the Prepetition Senior Lender, comply with the Approved Budget;

(ii)    with respect to claims incurred on or after the Carve-Out Trigger Date, the claims of Retained Professionals for unpaid fees and expenses (after application of all retainers) that were incurred on and after the Carve-Out Trigger Date; provided that, in each case, such fees and expenses of the Retained Professionals are ultimately allowed on

a final basis by this Court under sections 330 and 331 of the Bankruptcy Code, are not excluded from the Carve-Out under paragraph 29 of this Order and do not exceed $250,000 in the aggregate for all of the Retained Professionals (such fees and expenses, the "**Post-Carve-Out Trigger Date Expenses**" and the permitted amount thereof, the "**Post-Carve-Out Trigger Date Amount**" and, together with the Pre-Carve-Out Trigger Date Amount, the "**Carve-Out Amount**"); and

(iii)   unpaid fees payable to the United States Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code.

b.   Carve-Out Trigger Date.   As used herein, the term "**Carve-Out Trigger Date**" means the date on which the Postpetition Lender provides written notice to the Debtors that the Carve-Out is invoked, which notice shall be delivered only on or after the Termination Date.

c.   Carve-Out Trigger Date Amounts.   Subject to the terms and conditions of this Order, the Approved Budget and any Postpetition Loan Documents, the Debtors shall be permitted, during the time period prior to the Carve-Out Trigger Date, to pay compensation and reimbursement of reasonable fees and expenses of the Retained Professionals allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code, as the same may be due and payable, that constitute Pre-Carve-Out Trigger Date Expenses and such payments shall not reduce or be deemed to reduce the Post-Carve-Out Trigger Date Amount. On and after the Carve-Out Trigger Date, the dollar amounts available to be paid under the Carve-Out Amount shall be reduced, dollar-for-dollar, by the aggregate amount of payments made to the Retained Professionals on account of their Post-Carve-Out Trigger Date Expenses (whether from Cash Collateral, any proceeds of the Postpetition Facility, or otherwise).

d.   Reservation of Rights.   Payment of any fees and expenses of the Retained Professionals pursuant to the Carve-Out shall not, and shall not be deemed to, (i) reduce any Debtor's obligations owed to any of the Postpetition Lender, the Prepetition Secured Lenders or the Prepetition Subordinate Debenture Collateral Agent, or (ii) subordinate, modify, alter or otherwise affect any of the liens and security interests of such parties in the Postpetition Collateral or Prepetition Senior Collateral (or their respective claims against the

01:14557328.1

Debtors).   The Postpetition Lender, the Prepetition Secured Lenders and the Prepetition Subordinate Debenture Collateral Agent shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Retained Professionals (or of any other Person) incurred in connection with the Chapter 11 Cases or any Successor Case, and nothing in this Order or otherwise shall be construed to obligate such parties in any way to pay compensation to or to reimburse expenses of any Retained Professional or any other Person, or to ensure that any Debtor has sufficient funds to pay such compensation or reimbursement. Nothing herein shall impair, or be construed to impair, the ability of any party to object to any of the fees, expenses, reimbursement or compensation of the Retained Professionals.

14.    Cash Collection Procedures.

a.    Generally.  From and after the date of the entry of this Order, all collections and proceeds of any Postpetition Collateral or Prepetition Senior Collateral or services provided by any Debtor and all Cash Collateral which shall at any time come into the possession, custody or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same bank accounts into which the collections and proceeds of the Prepetition Senior Collateral were deposited under the Prepetition Senior Credit Agreement (or in such other accounts as are designated by Postpetition Lender from time to time), and such collections and proceeds upon such deposit shall be applied, subject to the Carve-Out and any Prior Liens, first against the Postpetition Obligations and then Prepetition Senior Obligations as provided in any Postpetition Loan Documents and this Order. The Debtors shall promptly enter into any additional agreements providing for the establishment of lock boxes, blocked accounts, or similar arrangements in favor of the Postpetition Lender for purposes of facilitating cash collections from the Debtors as requested by the Postpetition Lender.  Any bank account used or established pursuant to this Order shall also comply with the provisions of the *Order (I) Approving (A) Continued Use of the Debtors' Existing Cash Management System and Procedures, (B) Continuation of Intercompany Transactions, (C)*

01:14557328.1

-30-

*Maintenance and Use of Existing Bank Accounts and (D) Waiver of Certain Operating Guidelines Relating to Bank Accounts and the Requirements of Section 345 of the Bankruptcy Code; (III) Direction Banks to Honor Prepetition Checks; and (III) Granting Related Relief.*

b.    <u>Existing Accounts</u>.    The Prepetition Secured Lenders and the Prepetition Subordinate Debenture Collateral Agent shall immediately share dominion and control with the Postpetition Lender with respect to each depository account of the Debtors or other third party that was subject to a deposit account control agreement or similar agreement with or in favor of any of the Prepetition Secured Lenders or Prepetition Subordinate Debenture Collateral Agent as of the Petition Date, and such agreements shall hereafter be exclusively enforceable by the Postpetition Lender against, and binding upon, each depository institution party thereto until the Postpetition Obligations have been paid in full in cash and the Postpetition Facility shall have been terminated, after which such agreements shall again be solely enforceable by the Prepetition Secured Lenders or Prepetition Subordinate Debenture Collateral Agent, as applicable.

15.    <u>Non-Ordinary Course Dispositions</u>.    Subject to the terms and conditions of the Prepetition Subordination Agreements, the respective rights of the Postpetition Lender, Prepetition Secured Lenders and the Prepetition Subordinate Debenture Collateral Agent to credit bid all or any portion of the Postpetition Obligations, Prepetition Senior Obligations and Prepetition Subordinate Debenture Obligations (as applicable) under section 363(k) of the Bankruptcy Code and other applicable law in connection with any proposed sale of Prepetition Senior Collateral or Postpetition Collateral (other than the sale of Inventory in the ordinary course of any Debtor's business), or to object to such proposed sale or other Asset Disposition, shall be preserved through the closing of such sale or other Asset Disposition; <u>provided</u>, <u>however</u>, that in exchange for the rights afforded to the Prepetition Senior Lender hereunder, the Prepetition Senior Lender has agreed to support the Asset Disposition contemplated by the *Debtors' Motion For Entry of (I) an Order (A) Authorizing and Approving Bidding Procedures*

*in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Authorizing and Approving Stalking Horse Protections, (C) Authorizing and Approving Procedures Related to the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the Sale Approval Hearing, (E) Approving the Form and Manner of the Notice of the Sale Hearing, and (F) Granting Certain Related Relief, and (II) an Order (A) Approving the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale, and (C) Granting Certain Related Relief,* filed on the Petition Date (the "**Bidding Procedures and Sale Motion**" and the bidding procedures approved thereby, the "**Bidding Procedures**"). Any and all proceeds arising from or in connection with any sale, lease, transfer, or other disposition of Postpetition Collateral or Prepetition Senior Collateral(other than the sale of Inventory in the ordinary course of any Debtor's business), shall, subject to the terms of any Postpetition Loan Documents, be immediately transferred to Postpetition Lender for permanent application to the Postpetition Obligations, with any remainder (if any) delivered to the Debtors for subsequent distribution as and when approved by the Court.

16.    Landlord Agreements.    Upon entry of the Final Order, all landlord agreements to which the Prepetition Senior Lender, the Prepetition Subordinate Debenture Creditors or the Prepetition Subordinate Debenture Collateral Agent is a party shall be deemed amended to include the Postpetition Lender as a beneficiary thereunder, and such agreements shall thereafter be additionally enforceable by the Postpetition Lender against, and binding upon, each landlord party thereto in accordance with, and subject to, its respective terms and conditions until the Postpetition Obligations shall have been paid in full in cash and the Postpetition Facility shall have been terminated, after which such agreements shall again be solely enforceable by the applicable Prepetition Senior Lender, the Prepetition Subordinate Debenture Creditors or the Prepetition Subordinate Debenture Collateral Agent, as applicable.

01:14557328.1

17.    <u>Adequate Protection Senior Obligations</u>.  Until the indefeasible repayment in full in cash of the Prepetition Senior Obligations, as adequate protection for the Prepetition Senior Lender's interest in the Prepetition Senior Collateral, the Prepetition Senior Lender is hereby granted the following:

a.    <u>Replacement Liens</u>.  Pursuant to sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, the Prepetition Senior Lender is hereby granted by each Debtor continuing valid, binding, enforceable and perfected, liens and security interests in and on all of the Postpetition Collateral (the "**Adequate Protection Senior Liens**").  The Adequate Protection Senior Liens shall (a) be subordinate only to: (1) the Carve-Out, (2) the Postpetition Liens and (3) the Prior Liens; and (b) be senior and superior to the Subordinate Liens and Related Rights.  The Adequate Protection Senior Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment or avoidance, for all purposes in the Chapter 11 Cases and any Successor Case.  Except as described in clause (a) above, no other liens or security interests, whether for adequate protection or otherwise, shall be senior or equal to or <u>pari</u> <u>passu</u> with the Adequate Protection Senior Liens in these Chapter 11 Cases or any Successor Case without the prior written consent of the Prepetition Senior Lender given in accordance with the Prepetition Senior Credit Agreement (which consent may be withheld in its sole discretion).

b.    <u>Adequate Protection Senior Claim</u>.  Pursuant to section 507(b) of the Bankruptcy Code, the Prepetition Senior Lender shall have an allowed super-priority administrative expense claim (the "**Adequate Protection Senior Claim**") against each Debtor and its respective estate.  The Adequate Protection Senior Claim shall: (a) be subordinate only to: (1) the Carve-Out, (2) the Postpetition Liens, (3) the Prior Liens, and (4) the Super-Priority Claim; and (b) be senior and superior to the Subordinate Claims and Related Rights.  Except as described in clause (a) above, no cost or expense of administration under any provision of the Bankruptcy Code (whether incurred in these Chapter 11 Cases or any Successor Case, whether

for adequate protection, the lack of, or failure to provide, adequate protection, or otherwise), shall be senior to, equal to, or pari passu with, the Adequate Protection Senior Claim.

      c.    Interest, Paydown and Fees.  As further adequate protection, and without limiting any rights of the Prepetition Senior Lender under section 506(b) of the Bankruptcy Code which are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition Senior Lender to the entry of this Order and the Debtors' consensual use of Cash Collateral as provided herein, the Debtors shall, on the entry of this Order and the initial advance of funds under the Postpetition Facility, pay the Prepetition Senior Loan Paydown (which shall be paid directly by the Postpetition Lender to the Prepetition Senior Lender on the Debtors' behalf), and, from and after the date of the initial advance under the Postpetition Facility and on a monthly basis thereafter, pay or reimburse the Prepetition Senior Lender (i) monthly interest payments due under the Prepetition Senior Credit Agreement at the non-default cash pay interest rate (excluding any paid in kind interest), and (ii) for any and all of its accrued and past-due fees, costs, expenses and charges payable under the Prepetition Senior Loan Documents, including without limitation, the reasonable attorneys' and other fees and expenses of the Prepetition Senior Lender as provided in the Prepetition Senior Credit Agreement, whether accrued prepetition or to be incurred postpetition, all without further notice, motion or application to, order of, or hearing before, this Court, provided that payment of such accrued fees, costs, expenses and other charges from the Postpetition Facility or from Cash Collateral (until such time as the Postpetition Obligations are indefeasibly paid in full and the Postpetition Facility has been terminated) shall in no event exceed $200,000 in the aggregate. For avoidance of doubt, the foregoing shall not constitute a waiver of any rights the Prepetition Senior Lender may have under section 506(b) of the Bankruptcy Code to include fees, costs and other charges in the Prepetition Senior Obligations.

      d.    Adequate Protection Senior Obligations.  The Adequate Protection Senior Liens and Adequate Protection Senior Claim shall secure the payment of the Prepetition

01:14557328.1

Senior Obligations in an amount equal to any diminution in the value of the Prepetition Senior Lender's interests in the Prepetition Senior Collateral from and after the Petition Date (the amount of such diminution, the "**Adequate Protection Senior Obligations**") including, without limitation, any such diminution resulting from the following: (i) the use by the Debtors of the Prepetition Senior Collateral, including, without limitation, the Cash Collateral, (ii) the imposition of the Postpetition Liens, which will prime the Primed Liens, (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code or (iv) the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Senior Collateral or otherwise.

   e. <u>Waiver of Priming Rights and Use of Cash Collateral</u>.  Subject only to the rights granted to the Postpetition Lender or any entity that is an assignee of, or refinances or repays, the Postpetition Facility, the Debtors and their estates (and any party in interest acting on behalf of the Debtors or their estates) ~~hereby irrevocably waive, and are forever barred from asserting or exercising~~ *shall not assert or exercise* any right (i) without the Postpetition Lender's and Prepetition Senior Lender's prior written consent, or (ii) without prior indefeasible payment and satisfaction in full in cash of all of the Postpetition Obligations and Prepetition Senior Obligations: (w) to grant or impose, or request that the Court grant or impose, under section 364 of the Bankruptcy Code or otherwise, liens on or security interests in the Postpetition Collateral or Prepetition Senior Collateral that are *pari passu* with or senior to any of the Postpetition Obligations, Prepetition Senior Obligations, Postpetition Liens or the Prepetition Senior Liens, other than, with respect to the liens and claims of the Prepetition Senior Lender, the liens and claims provided to the Postpetition Lender hereunder (or any assignee of the Postpetition Lender's rights hereunder); (x) to seek the non-consensual use of the Postpetition Lender's or Prepetition Senior Lender's Cash Collateral under section 363 of the Bankruptcy Code; (y) to modify or affect any of the rights of the Postpetition Lender or Prepetition Senior Lender under this Order;

or (z) to propose a plan of reorganization or liquidation that would modify or affect any of the rights of the Postpetition Lender or Prepetition Senior Lender under this Order.

18.   _Adequate Protection Junior Obligations_.  Until the indefeasible repayment in full in cash of the Prepetition Subordinate Debenture Obligations, as adequate protection for the Prepetition Subordinate Debenture Collateral Agent's interest in the Prepetition Senior Collateral, the Prepetition Subordinate Debenture Collateral Agent and Prepetition Subordinate Debenture Creditors are hereby granted the following:

a.   _Replacement Liens_.  Pursuant to sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, the Prepetition Subordinate Debenture Collateral Agent, for its benefit and the benefit of the Prepetition Subordinate Debenture Creditors, is hereby granted by each Debtor continuing valid, binding, enforceable and perfected, liens and security interests in and on all of the Postpetition Collateral (the "**Adequate Protection Junior Liens**").  The Adequate Protection Junior Liens shall be entitled to the same rights, priorities, benefits and protections granted to or conferred upon the Adequate Protection Senior Liens under this Order, except that such Adequate Protection Junior Liens shall be junior and subordinate to the Postpetition Liens, the Super-Priority Claim, the Prior Liens, the Prepetition Senior Liens, the Adequate Protection Senior Liens, the Adequate Protection Senior Claims, and the Carve-Out.

b.   _Adequate Protection Junior Claim_.  Pursuant to section 507(b) of the Bankruptcy Code, the Prepetition Subordinate Debenture Collateral Agent and the Prepetition Subordinate Debenture Creditors shall have an allowed super-priority administrative expense claim (the "**Adequate Protection Junior Claim**") against each Debtor and its respective estate.  The Adequate Protection Junior Claim shall be entitled to the same rights, priorities, benefits and protections granted to or conferred upon the Adequate Protection Senior Claim under this Order, except that such Adequate Protection Junior Claim shall be junior and subordinate to the Super-Priority Claim, the Adequate Protection Senior Claim, and the Carve-Out.

c.    Adequate Protection Junior Obligations.  The Adequate Protection Junior Liens and Adequate Protection Junior Claim shall secure the payment of the Prepetition Subordinate Debenture Obligations in an amount equal to any diminution in the value of the Prepetition Subordinate Debenture Collateral Agent's interests in the Prepetition Senior Collateral from and after the Petition Date (the amount of such diminution, the "**Adequate Protection Junior Obligations**") including, without limitation, any such diminution resulting from the following: (i) the use by the Debtors of the Prepetition Senior Collateral, including, without limitation, the Cash Collateral, (ii) the imposition of the Postpetition Liens, which will prime the Primed Liens, (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code or (iv) the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Senior Collateral or otherwise.

19.    Subordination of Prepetition Obligations.  Notwithstanding anything in this Order to the contrary, any and all claims and liens of the Postpetition Lender arising with respect to or in connection with this Order or Postpetition Loan Documents (the "**Superior Obligations**"), including, without limitation, the Postpetition Obligations, Postpetition Liens, and Super-Priority Claims, must and shall be indefeasibly paid and satisfied in full in cash and all lending commitments under any Postpetition Loan Documents must be terminated before any payment or distribution, whether pursuant to a plan of reorganization, setoff or otherwise, may or can be made to or retained by any of the Prepetition Secured Lenders or the Prepetition Subordinate Debenture Collateral Agent arising with respect to or in connection with this Order (except with respect to any payments described in paragraph 17(c) of this Order), the Prepetition Senior Loan Documents, and/or the Prepetition Subordinate Debenture Documents (collectively, the "**Subordinate Obligations**").  Any payment or distribution, whether in cash, securities or other property, which would otherwise, but for the terms hereof, be payable or deliverable to any Prepetition Secured Lender or the Prepetition Subordinate Debenture Collateral Agent in respect of or in connection with any Subordinate Obligations shall be (x) paid or delivered directly to the

Postpetition Lender (to be held and/or applied by Postpetition Lender in accordance with the terms of this Order) until all Superior Obligations are indefeasibly paid and satisfied in full in cash and all commitments to lend under the Postpetition Facility shall have been terminated, and (y) shall be segregated and held in trust and promptly paid over to the Postpetition Lender in the same form as received, with any necessary endorsements. The Postpetition Lender is authorized to make such endorsements as agent for any holder of Subordinate Obligations. Until all Superior Obligations are indefeasibly paid and satisfied in full in cash and all commitments to lend under the Postpetition Facility shall have been terminated, the Postpetition Lender shall not have any obligation of, and the holders of Subordinate Obligations waive any requirement regarding, and shall not be entitled to demand, request, plead or otherwise claim the benefit of, any marshalling, appraisal, valuation or other similar right that may otherwise be available under applicable law in connection with the Postpetition Collateral.

20.    <u>Waiver of Section 506(c) Claims</u>. Subject to entry of the Final Order, no costs or expenses of administration or other charge, lien, assessment or claim incurred on or after the Petition Date of any Person or entity shall be imposed against the Postpetition Lender, its claims or the Postpetition Collateral under section 506(c) of the Bankruptcy Code or otherwise, and the Debtors hereby irrevocably waive any and all such rights, remedies and benefits under section 506(c) of the Bankruptcy Code as to the Postpetition Lender, its claims or the Postpetition Collateral. Subject to entry of the Final Order, no costs or expenses of administration or other charge, lien, assessment or claim incurred on or after the Petition Date of any Person or entity shall be imposed against the Prepetition Secured Lenders or the Prepetition Subordinate Debenture Collateral Agent, their respective claims or the Prepetition Senior Collateral under section 506(c) of the Bankruptcy Code or otherwise, and the Debtors hereby irrevocably waive any and all such rights, remedies and benefits under section 506(c) of the Bankruptcy Code as to the Prepetition Secured Lenders or the Prepetition Subordinate Debenture Collateral Agent, their respective claims or the Prepetition Senior Collateral. Each of the

Postpetition Lender, the Prepetition Secured Lenders and the Prepetition Subordinate Debenture Collateral Agent does not consent to any surcharge of or recovery from their respective collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, and nothing in this Order shall be deemed a consent to any such surcharge or recovery from such collateral.

21.    <u>Other Waivers</u>.  Except for the Carve-Out and Prior Liens , no claim or lien having a priority superior to or <u>pari passu</u> with those granted pursuant to this Order to the Postpetition Lender, or as otherwise permitted by the Prepetition Subordination Agreements, to the  Prepetition Secured Lenders or the Prepetition Subordinate Debenture Collateral Agent, respectively, shall be granted or allowed while any portion of the Postpetition Obligations or Postpetition Facility (or any refinancing thereof or commitment to provide loans thereunder), the Adequate Protection Senior Obligations or the Adequate Protection Junior Obligations remain outstanding.    The Debtors shall not grant mortgages, security interests, or liens in the Postpetition Collateral to any parties other than the Postpetition Lender pursuant to section 364(d) of the Bankruptcy Code or otherwise.

22.    <u>Automatic Perfection</u>.

a.      The Postpetition Liens, the Adequate Protection Senior Liens and the Adequate Protection Junior Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further notice, act or action of or by any Person or entity, and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, or other documents.  If the Postpetition Lender, the Prepetition Senior Lender or the Prepetition Subordinate Debenture Collateral Agent hereafter request that the Debtors execute and deliver to it any financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by such party to be reasonably necessary or desirable to further evidence the perfection of the liens and security

interests provided under this Order, then the Debtors are hereby authorized and directed, at their sole cost and expense, to promptly execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the Postpetition Lender, the Prepetition Senior Lender or the Prepetition Subordinate Debenture Collateral Agent (as applicable) are hereby authorized to file or record such documents in their respective discretion, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Order, but with the priorities as set forth herein.  The Postpetition Lender, the Prepetition Senior Lender or the Prepetition Subordinate Debenture Collateral Agent may (in their respective sole discretion), but shall not be required to, file a certified copy of this Order in any filing or recording office in any state, county or other jurisdiction in which any Debtor has real or personal property and such filing or recording shall be accepted and shall constitute sufficient evidence of perfection of such applicable parties' interests in the Postpetition Collateral at the time and on the date of entry of this Order, but with the priorities as set forth herein.

        b.     Notwithstanding anything in this Order to the contrary, (i) neither the Prepetition Secured Lenders nor the Prepetition Subordinate Debenture Collateral Agent shall request or file such financing statements, mortgages, notices of lien or similar instruments, or otherwise confirm the perfection of such security interests and liens granted in this Order, unless the Postpetition Lender shall theretofore have done so or consented thereto and (ii) the Prepetition Subordinate Debenture Collateral Agent and Prepetition Subordinate Debenture Creditors shall not request or file such financing statements, mortgages, notices of lien or similar instruments, or otherwise confirm the perfection of such security interests and liens granted in this Order, unless the Prepetition Senior Lender shall theretofore have done so or consented thereto.

        c.     To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the security

interests and liens authorized or created under or in connection with this Order or any Postpetition Loan Documents, or otherwise would impose filing or registration requirements or fees and charges with respect thereto, such law is hereby pre-empted to the maximum extent permitted by the United States Constitution, the Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy Court; provided that the Postpetition Lender, the Prepetition Senior Lender or the Prepetition Subordinate Debenture Collateral Agent may still take such steps as they wish to perfect their respective security interests and liens under otherwise applicable state law without waiving the benefits of this provision of this Order.

23.    Default Under Other Documents.  The Postpetition Lender shall have all rights and remedies with respect to the Debtors and any other rights, remedies, benefits and privileges as are set forth in this Order and any Postpetition Loan Documents (as applicable). Except as otherwise expressly provided herein, notwithstanding anything to the contrary contained in any prepetition or postpetition agreement, contract, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated or bound, any provision that restricts, conditions, prohibits, limits or impairs in any way any Debtor from granting the Postpetition Lender the postpetition security interests or liens upon any of its assets, properties or other Postpetition Collateral or otherwise entering into and complying with all of the terms, conditions and provisions of this Order ~~and any Postpetition Loan Documents~~ shall be unenforceable against such Debtor, and therefore, shall not adversely affect the validity, priority, perfection or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to the Postpetition Lender pursuant to this Order ~~and/or any Postpetition Loan Documents.~~

24.    Successors and Assigns.  The provisions of this Order and any Postpetition Loan Documents shall, as applicable, be binding upon and inure to the benefit of the Postpetition Lender, the Prepetition Secured Lenders and the Prepetition Subordinate Debenture Collateral Agent, and the Debtors and their respective estates, and their respective successors and assigns,

including, without limitation, any trustee or other fiduciary hereafter appointed as a legal representative of any of the Debtors or their estates, whether in these Chapter 11 Cases or any Successor Case.

25.     Survival.  The provisions of this Order and any actions taken pursuant thereto: (a) shall survive the entry of any order (i) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (ii) substantively consolidating any of the Debtors or their respective estates, (iii) dismissing or closing any of the Chapter 11 Cases, or (iv) confirming any plan in any of the Chapter 11 Cases; and (b) shall continue in full force and effect notwithstanding the entry of any such order.

26.     Section 364(e); Effect of Modification or Appeal.  Based on the findings set forth in this Order, in consideration for the financing provided under Postpetition Facility, the Postpetition Lender is entitled to, and hereby is granted, the full rights, benefits, privileges and protections of, and provided by, section 364(e) of the Bankruptcy Code with respect to the Postpetition Obligations (and related liens, claims, rights, remedies and benefits) created or authorized by this Order in the event that this Order or any authorization or approval contained herein is subsequently stayed, vacated, reversed, amended or modified on appeal.  Any subsequent stay, modification, reversal, amendment or vacation of this Order shall not alter, modify or affect the validity, priority, perfection or enforceability of any claim, lien, or security interest of the Postpetition Lender, the Prepetition Secured Lenders or the Prepetition Subordinate Debenture Collateral Agent authorized, created or granted pursuant to this Order and outstanding immediately prior to the actual receipt of written notice by the Postpetition Lender and Prepetition Agents of the effective date of such stay, modification, reversal, amendment or vacation.  Notwithstanding any such stay, modification, reversal, amendment or vacation or the exercise of any rights and remedies with respect thereto, all obligations and other financial accommodations made pursuant to this Order, all Postpetition Obligations incurred and uses of Cash Collateral permitted by the Debtors pursuant hereto prior to the actual receipt of

written notice by the Postpetition Lender, the Prepetition Secured Lenders or the Prepetition Subordinate Debenture Collateral Agent, as applicable, of the effective date of such stay, modification, reversal, amendment or vacation, shall be governed in all respects by the original provisions of this Order and the Postpetition Lender, the Prepetition Secured Lenders and the Prepetition Subordinate Debenture Collateral Agent shall be entitled to all of the rights, privileges, remedies, protections and benefits contained or granted herein or in section 364(e) of the Bankruptcy Code, any Postpetition Loan Documents and this Order (as applicable), including, without limitation, the Postpetition Liens, Super-Priority Claims, Adequate Protection Senior Liens, Adequate Protection Senior Claims, Adequate Protection Junior Liens and Adequate Protection Junior Claims.

27.    Modification of Automatic Stay; Other Remedies.

a.    Subject to sub-paragraph (c) below, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted and vacated as to the Postpetition Lender to the extent necessary to permit it to perform in accordance with, provide any notice under, and exercise, enjoy and enforce its rights, benefits, privileges and remedies pursuant to this Order and the other Postpetition Loan Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court.  Subject to sub-paragraph (c) below, regardless of any change in circumstances (whether or not foreseeable), neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the Postpetition Lender's exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies as and to the extent provided in this Order.

b.    Subject to sub-paragraph (c) below, the Postpetition Lender is hereby authorized and granted leave from the automatic stay under section 362 of the Bankruptcy Code to do the following on and after the Termination Date, in each case without further notice, motion or application to, order of, or hearing before, this Court:

(i)   terminate any obligation of Postpetition Lender to make loans or other extensions of credit under this Order or any Postpetition Loan Documents;

(ii)   declare all Postpetition Obligations immediately due and payable in full in cash, and require that all letters of credit and other contingent obligations related thereto, if any, to be cash collateralized or terminated without liability to Postpetition Lender;

(iii)   revoke the Debtors' right, if any, under this Order and/or the other Postpetition Loan Documents to use Cash Collateral; and

(iv)   receive and apply proceeds of Postpetition Collateral to the Postpetition Obligations in accordance with the terms and conditions of this Order and any Postpetition Loan Documents.

c.   On and after the Termination Date, to the extent approved by subsequent order of this Court and subject only to the provisions of the last two sentences of this sub-paragraph c., the Postpetition Lender shall be entitled to foreclose or otherwise enforce its liens on any or all of the Postpetition Collateral and/or to exercise any other default-related rights and remedies under this Order, any Postpetition Loan Documents, or applicable law to the extent not already permitted pursuant to sub-paragraph b. above. The parties shall use their best efforts to schedule and attend an expedited Court hearing within ~~three (3)~~ five (5) days of notice of the Termination Date being given to the Debtors. The Debtors acknowledge and agree, and this Court hereby orders, that the only issue to be determined and decided at any Court hearing regarding such matters is whether the Termination Date has occurred in accordance with the terms hereof, and notice of such hearing need only be given to the Debtors, any statutory committee of unsecured creditors (and any subsequent trustee of the Debtors' estates) and the U.S. Trustee.

28.   <u>No Waiver of Rights</u>.

a.   <u>Generally</u>.   Without limiting the terms and conditions of paragraphs 9 through 12 and 19 of this Order, none of the Postpetition Lender, Prepetition Secured Lenders, or the Prepetition Subordinate Debenture Collateral Agent waives, and each

expressly reserves, any and all claims, causes of action, defenses, rights and remedies it has or may have pursuant to any or all of any Postpetition Loan Documents, the Prepetition Senior Loan Documents, the Prepetition Subordinate Debenture Documents, the Prepetition Subordination Agreements, any other inter-creditor or subordination agreement, the Bankruptcy Code and/or under applicable law against or with respect to any Debtor and any other Person or entity.

      b.    <u>Relative Priorities; Prepetition Subordination Agreements</u>.   In determining the relative priorities, rights and remedies of the Prepetition Secured Lenders and the Prepetition Subordinate Debenture Collateral Agent (including, without limitation, the relative priorities and rights of such parties with respect to the replacement liens and administrative expense claims granted, or amounts payable, by the Debtors under this Order and the modification of the automatic stay), such priorities, rights and remedies shall, pursuant to section 510 of the Bankruptcy Code, continue to be governed by the Prepetition Subordination Agreements, and, without limiting the terms and conditions of <u>paragraphs 9</u> through <u>12</u> and <u>19</u> of this Order, nothing in this Order or any Postpetition Loan Documents shall, or shall be deemed to, alter, amend, modify, impair, diminish or otherwise affect the terms and conditions of the Prepetition Subordination Agreements, which terms and conditions remain in full force and effect as between or among such parties.   Furthermore, pursuant to section 510 of the Bankruptcy Code, any other inter-creditor or subordination agreement between and/or among the Prepetition Secured Lenders, the Prepetition Subordinate Debenture Collateral Agent, any Debtor and any other non-Debtor party thereto, and any other applicable inter-creditor or subordination provisions contained in any credit agreement, security agreement, indenture or related document, remain in full force and effect and are not amended, altered or modified by the terms of this Order or any Postpetition Loan Documents.

      c.    <u>Additional Rights Preserved</u>.   Without limiting the generality of this <u>paragraph 28</u>, but subject to the Prepetition Subordination Agreements, the Postpetition

Lender, Prepetition Secured Lenders and the Prepetition Subordinate Debenture Collateral Agent may, as applicable, petition this Court for any such additional protection they may reasonably require with respect to the Postpetition Obligations, the Prepetition Senior Obligations, the Prepetition Subordinate Debenture Obligations, or otherwise, including, without limitation, their rights to request additional adequate protection of their interests in the Prepetition Senior Collateral. Except as otherwise set forth herein, but subject to the Prepetition Subordination Agreements, entry of this Order shall not in any way constitute agreement, consent, or acquiescence by the Postpetition Lender, Prepetition Secured Lenders, or the Prepetition Subordinate Debenture Collateral Agent Prepetition Agents to the terms of any plan of reorganization or liquidation filed in the Chapter 11 Cases.

29.    <u>Restriction on Use of Lenders' Funds</u>.  No portion of the Postpetition Facility, the Postpetition Collateral, the Prepetition Senior Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Approved Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with asserting any claims, actions or causes of action against or adverse to the interests of any of the Postpetition Lender, the Prepetition Secured Lenders or the Prepetition Subordinate Debenture Collateral Agent, including, without limitation, any action challenging or raising any defenses to the Postpetition Obligations, the Prepetition Senior Obligations, the Prepetition Subordinate Debenture Obligations, the Postpetition Liens, the Prepetition Senior Liens or the Prepetition Subordinate Liens; <u>provided</u>, that the foregoing restriction shall not apply to the reasonable fees and expenses of the Retained Professionals incurred in connection with any determination of this Court (x) under section 506(a) of the Bankruptcy Code that all or any portion of the Prepetition Senior Obligations and/or Prepetition Subordinate Debenture Obligations constitute unsecured deficiency claims or (y) regarding the amount, if any, of the Adequate Protection Senior Obligations and Adequate Protection Junior Obligations; <u>provided</u>, <u>further</u>, that no more than $50,000 in the aggregate of the proceeds of the Postpetition Facility or the Postpetition Collateral

01:14557328.1

(including the Cash Collateral) may be used by the Creditors' Committee (and any subsequent trustee of the Debtors' estates) to investigate the Prepetition Senior Obligations, the Prepetition Subordinate Debenture Obligations, the Prepetition Senior Liens, and the Prepetition Subordinate Liens.

30.    Release of Claims.

a.    Generally. The release contained in Paragraph 31(c) of this Order, the stipulations and admissions contained in Paragraph D of this Order, and the Prepetition Senior Loan Paydown, shall be irrevocable and binding on all parties in interest, including, without limitation, the Creditors' Committee (and any subsequent trustee of the Debtors' estates), unless, and solely to the extent that, (a) the Creditors' Committee having established standing (or any subsequent trustee of the Debtors' estates so long as such trustee is appointed and acts prior to the Complaint Filing Deadline (as defined below in this paragraph)), or another party in interest that has established standing and requisite authority, has timely filed a complaint and commenced an adversary proceeding (subject to the limitations set forth in paragraph 29 of this Order) challenging, as applicable, the release contained in Paragraph 31(c) of this Order, the amount, validity, or enforceability of the Prepetition Senior Obligations, the Subordinated Prepetition Senior Lender Amount, or the Prepetition Subordinate Debenture Obligations, or the perfection or priority of the Prepetition Senior Liens or the Prepetition Subordinate Liens, or otherwise asserting any claims or causes of action on behalf of the Debtors' estates against (i) the Prepetition Senior Lender relating to the Prepetition Senior Obligations or the Subordinated Prepetition Senior Lender Amount, or (ii) the Prepetition Subordinate Debenture Collateral Agent or the Prepetition Subordinate Debenture Creditors relating to the Prepetition Subordinate Debenture Obligations, in each case no later than the earlier of (x) sixty (60) days after the date of appointment of the Creditors' Committee or (y) seventy-five (75) days after the Petition Date

01:14557328.1

(such earlier date, the "**Complaint Filing Deadline**"), and (b) this Court rules in favor of the plaintiff in any such timely and properly commenced adversary proceeding. If no such adversary proceeding is timely and properly commenced by the Complaint Filing Deadline, or to the extent such adversary proceeding does not result in a final and non-appealable order of this Court that is inconsistent with, as applicable, the release contained in Paragraph 31(c) of this Order or the acknowledgments of the Debtors contained in paragraph D of this Order, then, without the requirement or need to file any proof of claim with respect thereto and without further notice, motion or application to, order of, or hearing before, this Court, but in all cases subject to the Prepetition Subordination Agreements and paragraph 28 of this Order, the release contained in Paragraph 31(c) of this Order, the acknowledgments of the Debtors contained in paragraph D of this Order, and repayment of the Prepetition Senior Loan Paydown, shall be binding, conclusive and final on the Creditors' Committee (and any subsequent trustee of the Debtors' estates) and any other Person, entity or party-in-interest in the Chapter 11 Cases and any Successor Case and (i) all of the claims, liens and security interests of the Prepetition Secured Lenders and Prepetition Subordinate Debenture Collateral Agent shall be deemed to be finally allowed for all purposes in these Chapter 11 Cases and any Successor Case and shall not be subject to challenge by any party in interest as to validity, priority, voidability or otherwise (and the repayment of the Prepetition Senior Loan Paydown shall not be subject to disgorgement, reduction or other challenge), and (ii) the Debtors and their estates shall be deemed to have forever given the release contained in Paragraph 31(c) of this Order and released any and all claims or causes of action against the Prepetition Secured Lenders or the Prepetition Subordinate Debenture Collateral Agent with respect to the Prepetition Senior Loan Documents, the Prepetition Subordinate Debenture Documents, or any related transactions; provided that the Debtors and all

01:14557328.1

other parties in interest reserve all of their respective rights as to the value of the Prepetition

Senior Collateral and may seek and obtain at any time before or after the Complaint Filing

Deadline a determination of this Court (x) under section 506(a) of the Bankruptcy Code that all

or any portion of the Prepetition Senior Obligations and/or Prepetition Subordinate Debenture

Obligations constitute unsecured deficiency claims and (y) regarding the amount, if any, of the

Adequate Protection Senior Obligations and Adequate Protection Junior Obligations.

Notwithstanding anything to the contrary herein, if any such adversary proceeding is timely

commenced, the release contained in Paragraph 31(c) of this Order and the stipulations contained

in paragraph D hereof shall, as applicable, nonetheless remain binding on all parties in interest

and preclusive (as provided in the second sentence of this paragraph 30) except to the extent that

such release or stipulations, as applicable, are expressly challenged in such adversary

proceeding.  In the event a chapter 7 trustee is appointed before the expiration of the Complaint

Filing Deadline, such trustee shall have until the longer of (i) the Complaint Filing Deadline or

(ii) fourteen (14) days after the date of its appointment to take the acts or actions described in this

Paragraph 30(a), in each case unless otherwise ordered by this Court.

> b.    Prepetition Senior Loan Paydown.  If an adversary proceeding is

timely and properly commenced in accordance with the provisions above that challenges the

Prepetition Senior Loan Paydown or the Prepetition Senior Loans, and only if a final, non-

appealable order is entered by this Court upholding or granting any such claims or actions, then

this Court may, as applicable, require the disgorgement of the payment of the Prepetition Senior

Loan Paydown or such other remedy as may be appropriate under the circumstances.

Notwithstanding anything herein to the contrary, (i) none of Toshiba, the Postpetition Lender, or

any of their respective Affiliates, directors, officers, agents or other Representatives shall be

responsible for the direct payment or reimbursement of any amounts owed to the Prepetition Senior Lender, including, without limitation, the Prepetition Senior Loan Paydown (provided that the foregoing shall be paid directly by the Postpetition Lender to the Prepetition Senior Lender on behalf of the Debtors in accordance with the terms hereof), all of which shall be the sole and exclusive obligation and responsibility of the Debtors, (ii) nothing herein shall modify, limit or otherwise impair the rights of Toshiba, the Postpetition Lender, or any of their respective Affiliates, directors, officers, agents or other Representatives to take or otherwise pursue any rights or exercise any remedies in accordance with this Order or the Final Order, and (iii) the outcome of any challenge to the liens, claims or interests of the Prepetition Secured Lenders or any other Person, including any disgorgement ordered related to the Prepetition Senior Loan Paydown, shall not impair, affect or diminish the Postpetition Obligations, the Postpetition Liens, the Super-Priority Claims, or any other rights, benefits or privileges afforded to the Postpetition Lender under this Order, the Final Order or any Postpetition Loan Document.  Toshiba shall not challenge any of the Debtor's stipulations concerning the extent, validity, non-avoidability and priority of the Prepetition Senior Obligations, the Subordinated Prepetition Senior Lender Amount, the Prepetition Subordinate Debenture Obligations, or the perfection or priority of the Prepetition Senior Liens or the Prepetition Subordinate Liens.

31.    <u>No Liability to Third Parties; Release of Postpetition Lender; No Marshalling; No Discharge</u>.

a.    Solely in making decisions to advance loans to the Debtors, in administering any loans, in permitting the Debtors to use Cash Collateral, in approving any budget or in taking any actions permitted by this Order or any Postpetition Loan Documents, as applicable, the Postpetition Lender and the Prepetition Secured Lenders shall not (i) be deemed to be in control of the operations of any Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of any Debtor, and/or (ii) owe any fiduciary duty to any Debtor, its respective creditors or its respective estate, and their relationship with each Debtor shall not constitute or be deemed to constitute a joint venture or partnership with such Debtor.

01:14557328.1

*(handwritten: Subject to entry of the Final Order)*

b.     The Postpetition Lender shall not be subject to the equitable doctrine of "marshaling", "election of remedies" or any other similar doctrine, or an "equities of the case" claim under section 552(b) of the Bankruptcy Code, in each case with respect to any of its interest in the Postpetition Collateral.

c.     Subject to the provisions of <u>paragraph 30</u> of this Order, each Borrower hereby acknowledges effective upon entry of this Order, that the Borrowers and their Affiliates and subsidiaries have no defense, counterclaim, offset, recoupment, cross-complaint, claim or demand of any kind or nature whatsoever that can be asserted to seek affirmative relief or damages of any kind or nature from Toshiba, the Postpetition Lender, or any of their respective Affiliates or subsidiaries. Subject to the provisions of <u>paragraph 30</u> of this Order, the Borrowers, each in their own right and with respect to the Borrowers, on behalf of their bankruptcy estates, and on behalf of all their respective successors, assigns, subsidiaries and Affiliates and any Person acting for and on behalf of, or claiming through them, whether directly or derivatively (collectively, the "**Releasing Parties**"), hereby fully, finally and forever release and discharge Toshiba and the Postpetition Lender, and all of their respective past and present officers, directors, servants, agents, attorneys, Representatives, successors, assigns, heirs, parents, subsidiaries, Affiliates, and each Person acting for or on behalf of any of them (collectively, the "**Released Parties**") of and from any and all past and present actions, causes of action, demands, suits, claims, liabilities, liens, lawsuits, adverse consequences, amounts paid in settlement, costs, damages, debts, deficiencies, diminution in value, disbursements, expenses, losses and other obligations of any kind or nature whatsoever, whether in law, equity or otherwise (including, without limitation, those arising under Chapter 5 of the Bankruptcy Code and interest or other carrying costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties), whether known or unknown, fixed or contingent, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, now existing, heretofore existing or which may heretofore accrue against any of the Released Parties, whether held in a personal or representative capacity, and which are based on any act, fact, event or omission or other matter, cause or thing occurring at or from any time prior to and including the date hereof in any way, directly or indirectly arising out of, connected with or relating to their prior dealings, the Postpetition Facility, this Order, the Final Order and the transactions contemplated hereby, and all other agreements, certificates, instruments and other documents and statements (whether written or oral) related to any of the foregoing.

d.     The Postpetition Obligations shall not be discharged by the entry of an order confirming a plan of reorganization or liquidation in any Chapter 11 Case (and the Borrowers hereby waive any such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code).  Any such plan shall provide for the indefeasible payment in full in cash of the Postpetition Obligations on the effective date thereof.

32.    <u>Insurance</u>.

a.     At the Postpetition Lender's request, the Debtors shall list the Postpetition Lender as loss payee under the Debtors' insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance

01:14557328.1

policies in accordance with the terms and conditions of this Order and any Postpetition Loan Documents.

b.     The Borrowers shall cause to be carried and maintained commercial reasonable insurance against risks customarily insured against by comparable companies in the Borrowers' line of business and reasonable acceptable to the Postpetition Lender, including insurance covering all risks of physical loss or damage to the Postpetition Collateral in an amount not less than the full replacement cost of the Postpetition Collateral, provided that such insurance may be subject to standard exceptions and deductibles.  Upon the Postpetition Lender's request, the Borrowers shall deliver certificates of insurance evidencing compliance herewith, which certificates shall state that the Postpetition Lender is an additional insured and loss payee for such insurance.

c.     Until all Superior Obligations are indefeasibly paid and satisfied in full in cash and all commitments to lend under the Postpetition Facility shall have been terminated, any settlement for any losses covered by an insurance policy covering the Postpetition Collateral, and any award granted in a condemnation or similar proceeding (or a deed in lieu of condemnation) affecting the Postpetition Collateral shall be reasonably acceptable to the Postpetition Lender, and all proceeds of such policy, award, or deed will be applied in accordance the priorities described in this Order.

33.    <u>Final Hearing; Procedure for Objections to and Entry of Final Order</u>.  The Motion is set for a Final Hearing before this Court at __4:00 P__.M. prevailing Eastern time on December 19, 2013, at which time any party in interest may present any timely filed objections to the entry of the Final Order, which order shall be in form and substance acceptable to the Postpetition Lender in its sole discretion.  The Debtors shall, in accordance with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules of this Court, promptly serve a notice of the Final Hearing and entry of this Order, together with a copy of this Order, by electronic mail, facsimile, hand delivery or overnight delivery to the Notice Parties and Creditors' Committee (once appointed) or its counsel.  Such notice shall state that objections to the entry of the Final Order shall be in writing and shall be filed with the United States Bankruptcy Court for the District of Delaware by no later than 4:00 P.M. (prevailing Eastern time) on December 12, 2013, (the "**Objection Deadline**"), which objections shall be served so that the same are actually received by the Objection Deadline by: (i) Michael Nestor, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, fax (302-576-3321), mnestor@ycst.com and Sean T. Scott, Mayer Brown LLP, 71 S. Wacker Drive,

*, but for any Committee, such objection deadline is December 17, 2013 at 12:00 P.M. (Prevailing Eastern Time,*

Chicago, Illinois 60606, fax (312 706 8482) stscott@mayerbrown.com (counsel to the Debtors),

(ii) Robert A. Klyman, Latham & Watkins LLP, 355 S. Grand Ave, Los Angeles, CA 90071-1560, fax (213-891-8763), robert.klyman@lw.com, Keith A. Simon, Latham & Watkins LLP, 885 Third Avenue New York, NY 10022-4834, fax (212-751-4864), keith.simon@lw.com, and John H. Knight, Richards Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, fax (302-498-7512), knight@rlf.com (counsel to the Postpetition Lender); (iii) Stuart Komrower, Cole Schotz, Meisel, Forman and Leonard, P.A., 25 Main Street, Hackensack, NJ 07601, fax (201-678-6331), skomrower@coleschotz.com (counsel to the Prepetition Senior Lender) and (iv) The Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: David L. Buchbinder, Esq.).    Any objections by creditors or other parties-in-interest to any of the provisions of the Final Order shall be deemed forever waived and barred unless timely filed and served in accordance with this paragraph.

34.    Termination of Postpetition Facility and Use of Cash Collateral.

a.    During the budget period covered by the Initial Approved Budget, (i) the Debtors' authorization to obtain loans hereunder and/or to use Cash Collateral, and any obligation of the Postpetition Lender to provide loans under the Postpetition Facility, shall immediately and automatically terminate (except as the Postpetition Lender may otherwise agree in writing), and (ii) all Postpetition Obligations shall be immediately due and payable in cash (except as Postpetition Lender may otherwise agree in writing) upon the earliest to occur of any of the following (such earliest date, the "**Termination Date**"):

(1)    five (5) days following the Petition Date if this Order has not been entered by the Court by such date;

(2)    thirty (30) days following the Petition Date, unless the Court has entered the Final Order by such date, and such order has not be stayed, reversed, vacated or modified;

(3)    the termination by the Debtors or by the Buyer of the Stalking Horse APA;

(4)    the occurrence or existence of any facts, circumstances, or events which would authorize, allow or otherwise permit the Buyer to terminate the Stalking Horse APA for any reason, without regard to any applicable cure periods;

01:14557328.1

(5)      breach by the Debtors of any terms or conditions of this Order, including those terms and conditions specified in this Order regarding compliance with any Approved Budget, and such breach continues in effect for two (2) business days after written notice from the Postpetition Lender of such breach;

(6)      any of the Debtors shall assert that any of the terms or conditions of this Order are not valid and binding;

(7)      the reversal, vacation, modification, alteration, amendment or stay of this Order;

(8)      entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or any of the Debtors apply for, consent to, or acquiesce in, any such conversion;

(9)      the dismissal of any of the Chapter 11 Cases, or any of the Debtors apply for, consent to, or acquiesce in, any such dismissal;

(10)      entry of an order appointing a trustee pursuant to section 1104 of the Bankruptcy Code, or any of the Debtors apply for, consent to, or acquiesce in, any such appointment;

(11)      entry of an order appointing an examiner pursuant to section 1104(b) of the Bankruptcy Code with powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code, or any of the Debtors apply for, consent to, or acquiesce in, any such appointment;

(12)      this Court or any other court of competent jurisdiction enters an order or judgment, or any of the Debtors apply for, consent to, or acquiesce in, the entry of such order or judgment, in any of the Chapter 11 Cases (x) modifying, limiting, subordinating or avoiding (i) the priority of any Postpetition Obligations or (ii) the perfection, priority or validity of the Postpetition Liens, or (y) imposing, surcharging or assessing any claim or expense against the Postpetition Collateral, whether pursuant to § 506(c) of the Bankruptcy Code or otherwise;

(13)      the entry by the Court of an order or orders granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity or entities, other than the Postpetition Lender, to exercise remedies with respect to any portion of the Postpetition Collateral having a value, individually or in the aggregate, of in excess of $50,000;

(14)      any motion or application is filed by or on behalf of any Debtor seeking the entry of an order, or an order is entered in any of the Chapter 11 Cases, approving any subsequent debtor-in-possession facility for borrowed money or other extensions of credit that does not provide for the payment in full in cash of the Postpetition Obligations on the closing date of such debtor-in-possession facility; — indefeasible

(15)      other than with respect to the Carve-Out, any motion or pleading is filed by any of the Debtors seeking to grant, or the entry of any order granting, to any

*, Subject to entry
of the Final Order,*

party, (i) any lien senior or equal to the liens described in this Order or any Postpetition Loan Documents that are held by the Postpetition Lender in the Postpetition Collateral, or (ii) any claim or expense senior or equal to the claims and expenses described in this Order or any Postpetition Loan Documents that are held by the Postpetition Lender against any of the Debtors;

(16)   the payment of, or application for authority to pay, any prepetition claim without consent of the Postpetition Lender, unless permitted under first day orders acceptable to the Postpetition Lender;

(17)   the assertion of any claim by any of the Debtors or any statutory committee in any of the Chapter 11 Cases, or the entry of any order approving a claim by any person or entity (in each case whether under Section 506(c) of the Bankruptcy Code or otherwise) against the Postpetition Lender or the obligations under or Postpetition Collateral pledged to secure the Postpetition Facility;

(18)   the commencement of any suit, litigation or other proceeding by any Debtor or any statutory committee appointed in the Chapter 11 Cases against Toshiba, the Postpetition Lender, or any of their respective Affiliates, directors, officers, agents or other Representatives; or

(19)   the occurrence of the Maturity Date (as defined in paragraph 34.b below).

No notice or action contemplated in this Order shall require prior application to or authorization of the Court before such notice may be given or such action may be taken, except with respect to the exercise of remedies as expressly provided in paragraph 27.c. above.

b.   Unless the Postpetition Obligations are already due and payable, and notwithstanding anything to the contrary contained in this Order, all Postpetition Obligations shall be immediately due and payable (and the Postpetition Lender shall be entitled to immediate payment of such Postpetition Obligations without further application to or order of the Court) in cash (except as the Postpetition Lender may otherwise agree in writing) upon the earlier to occur of (i) forty-five (45) days after the Petition Date (the "**Maturity Date**"), which the Postpetition Lender, in its sole discretion, may extend by up to fifteen (15) days, or (ii) the consummation of any sale or other transfer or disposition of all, or any material portion, of the assets of any of the Debtors.

35.   Assignment of Rights.  The Borrowers acknowledge and understand that the Postpetition Lender may sell and assign all or part of its interest hereunder.  After such assignment, the term "Postpetition Lender" shall mean and include such assignee, and such assignee shall be vested with all rights, powers, benefits and remedies of the Postpetition Lender hereunder with respect to the interest so assigned; provided, however, that with respect to any such interest not so transferred, the Postpetition Lender shall retain all rights, powers, benefits

01:14557328.1

and remedies hereby given.  No such assignment by the Postpetition Lender shall relieve the Borrowers of any of their obligations hereunder.

36.    No Third Party Beneficiaries.    No provisions of this Order or any Postpetition Loan Documents are intended, nor will be interpreted, to provide or create any third-party beneficiary rights or any other rights of any kind in any person other than the Postpetition Lender, the Prepetition Secured Lenders, and the Borrowers (as applicable).

37.    Repayment of Special Accommodation Loan.    In consideration for the benefits to the Debtors' estates resulting from the Special Accommodation Loan, the repayment of the Special Accommodation Loan to the Special Accommodation Lender in full in cash directly out of the proceeds of any sale or other transfer or disposition of the Debtors' assets pursuant to the Bidding Procedures shall be a condition precedent to the closing of any such sale, transfer or disposition.

38.    Prepetition Senior Lender Closing Payment.    Upon the closing, and directly out of the proceeds of any sale or other disposition of the Debtors' assets pursuant to the Bidding Procedures, including the sale of such assets pursuant to the Stalking Horse APA, the Prepetition Senior Lender shall be entitled to receive an additional $1,000,000 payment on account of the remaining, unpaid principal balance under the Prepetition Senior Loans (the "**Prepetition Senior Lender Closing Payment**"), which Prepetition Senior Lender Closing Payment shall (a) be payable directly to the Prepetition Senior Lender by the Successful Bidder (as defined in the Bidding Procedures) and (b) deducted from the purchase price otherwise payable by such Successful Bidder.  The Prepetition Senior Lender reserves the right and shall be entitled to seek from the Debtors the proceeds of the sale of the Debtors' assets in excess of the Prepetition Senior Lender Closing Payment in payment of any remaining Prepetition Senior Loans and Subordinated Prepetition Senior Lender Amount, and thereafter in accordance with the priority of claims in the Chapter 11 Cases.

01:14557328.1

39.     The funding to be provided to the Debtors under the Postpetition Facility is budgeted to provide for any customer deposits placed with the Debtors prior to the Petition Date to the extent cash relating thereto was received by Prepetition Senior Lender from the Debtors' accounts prior to the Petition Date, and the Debtors shall treat such portion of the Postpetition Facility funding in the same manner as it has treated customer deposits in the ordinary course of business

40.     The automatic stay of section 362 of the Bankruptcy Code is hereby modified, *nunc pro tunc*, with respect to the sum of $311,407.61 of the Debtors' funds that was turned over to the Prepetition Senior Lender by Wells Fargo Bank after the Petition Date and Prepetition Senior Lender is hereby authorized to apply such sum to reduce the Prepetition Senior Loans.

Dated: December 4, 2013.

_____
PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

01:14557328.1