## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| ZCO LIQUIDATING CORPORATION, (f/k/a OCZ Technology Group, Inc.), *et al*. | Case No. 13-13126  (PJW) |
| Debtors. | (Jointly Administered) |
| | Re:  Docket No. 709 |
| | Objection Deadline: October 30, 2014 at 4:00 pm Hearing Date: November 6, 2014 at 11:00 a.m. |

**OBJECTIONS OF LEAD PLAINTIFFS TO MOTION OF THE LIQUIDATION TRUSTEE OF THE ZCO TRUST FOR AN ORDER (I) ENFORCING THE AUTOMATIC STAY AND PLAN INJUNCTION; (II) AWARDING DAMAGES, COSTS AND ATTORNEY'S FEES PURSUANT TO SECTION 362(K) OF THE BANKRUPTCY CODE; AND (III) GRANTING RELATED RELIEF**

Dated: October 30, 2014

Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
BFarnan@farnanlaw.com

LEVI & KORSINSKY, LLP
Nicholas I. Porritt, Esq.
Adam M. Apton, Esq.
1101 30th Street, Suite 115
Washington, D.C. 20007
Tel: (202) 524-4290
Fax: (212) 333-2121

*Attorneys for Lead Plaintiffs*

## **CONTENTS**

SUMMARY OF ARGUMENT .................................................................................. 1

PRELIMINARY STATEMENT ............................................................................... 2

STATEMENT OF RELEVANT FACTS .................................................................. 3

ARGUMENT ......................................................................................................... 10

    A.    The Automatic Stay Does Not Apply Because the Proceeds of the
           D&O Policies Are Not Property of the Trust.......................................... 10

         1.    Insurance Proceeds Do Not Belong to the Estate ......................... 11

         2.    The Trustee's Cited Authorities Do Not Support His Motion ....... 15

         3.    The Plan Injunction Does Not Apply To The Securities Class Action........... 17

    B.    The Bankruptcy Court Granted Relief from the Stay for Payment of
           Defense Costs, Including Judgments and Settlements.............................. 17

    C.    The Trustee Has No Direct Claims Against the Lead Plaintiffs and
           Its Claims Against Petersen and Knapp Have Been Released............................... 19

    D.    There Is No Basis For Any Award of Damages, Fees And Costs
           Against Lead Plaintiffs ............................................................................ 20

CONCLUSION...................................................................................................... 22

Leo Jegen, Vincent M. Monnier, Shih Leng Tan, and Len C. Villacres (collectively "Lead Plaintiffs"), court-appointed Lead Plaintiffs in *In re OCZ Technology Group, Inc. Securities Litigation*, Case No. 3:12-cv-05265-RS, currently pending in the United States District Court for the Northern District of California (the "Securities Class Action"), by and through undersigned counsel, hereby object to the Motion Of The Liquidation Trustee Of The ZCO Trust For An Order (I) Enforcing The Automatic Stay And Plan Injunction; (II) Awarding Damages, Costs And Attorney's Fees Pursuant To Section 362(k) Of The Bankruptcy Code; And (III) Granting Related Relief (the "Stay Motion").[1]  In support of their Objection, Lead Plaintiffs respectfully represent as follows:

## SUMMARY OF ARGUMENT

1.      It is indisputable that the debtor is not a party to the Securities Class Action.  The debtor has been dismissed from that action as of September 11, 2014.  The Trustee buries this essential point on page 13 of the Stay Motion.

2.      There is no asset or property of the estate at issue here.  Delaware law is well settled that the proceeds of director and officer insurance policies belong to the insured officers and directors and not the estate, especially where, as here, the policies contain priority of payment provisions that specify that proceeds are available first to satisfy loss against the insured individuals.

3.      This court recognized the established law and properly entered an order permitting the insured officers and directors to use the proceeds of the D&O Policies, including explicitly to fund "settlement" of claims against them.  The Trustee purports to dispute this, but even he must concede to the plain language of the order, which he quotes in a footnote in the Stay Motion.

---

[1] Docket No. 709.

4.      At present there are no claims asserted against former officers and directors or

OCZ's professionals, and even if there were, those claims would not reach the D&O policies

used, in part, to fund the class action settlement, because the policies are claims made policies

that have expired, and no claim was made during the active policy period.  Additionally, any of

the hypothetical claims that might be made by the Trustee against professionals to challenge the

process of settling the derivative suit would not be covered under the D&O Policies under any

circumstance as those professionals are not insured under those policies.

## PRELIMINARY STATEMENT

5.      In his Stay Motion, the Liquidation Trustee Of The ZCO Trust (the "Trustee")

seeks to apply the automatic stay to the Securities Class Action, a proceeding where no debtor is

a party and where, under clear precedent of this Court, no property of the estate or trust is

involved.  The Trustee's sole justification for this unwarranted relief is his fear that further

proceedings in the Securities Class Action will diminish certain insurance policies that, in the

future, hypothetically may be available to fund a recovery by the Trustee himself.  Importantly,

the Trustee does not claim any future direct coverage under these insurance policies as an insured

party; rather the Trustee believes he will be able to prove claims against parties insured under

those policies (and a number of parties plainly not covered by the policies).  The Trustee is now

seeking to use the automatic stay to prevent those insured parties from using their insurance

coverage to settle other covered claims brought by Lead Plaintiffs.  Such a contorted use of the

automatic stay as a sword lacks any precedential support and has been expressly rejected by the

Court numerous times.  The same result should hold here.

6.      The Stay Motion is filled with factual misrepresentations regarding the record and

misdirection regarding the law.  Most egregiously, the Trustee simply ignores the

indistinguishable prior decision of this Court in *In re World Health Alternatives, Inc.*, 369 B.R.

805 (Bankr. D. Del. 2007), where the Court rejected the identical arguments presented by the

Trustee here.  In *World Health*, a Chapter 7 trustee sought to use the automatic stay to prevent

approval of a securities class action settlement, which the debtor was not a party to, arguing that such approval would potentially diminish the proceeds of insurance policies the Trustee hoped to recover against in the future.  Judge Gross held that the proceeds of the insurance policies, which were substantively the same as the policies involved in this case, were not property of the estate and, therefore, the automatic stay did not prevent the approval of the securities class action settlement.  *World Health* is consistent with prior decisions of this Court as well as those of numerous other federal courts.  The Trustee makes no attempt to distinguish these cases; instead, he just pretends that they do not exist.

7.      Even if the proceeds of the D&O Policies in this case were the property of the estate and subject to the automatic stay, which they are not as a matter of law and contract, this Court has already lifted the stay to permit the insureds to use the proceeds to pay settlement amounts.  By an order dated March 13, 2013, this Court ordered that:  "the automatic stay is lifted for 'cause' to the extent necessary to allow [the insurers] to advance and/or reimburse defense costs and/or other loss (*including any settlement amounts and/or judgments*) in accordance with and subject to the terms and conditions of the D&O Policies" (emphasis added).  The Trustee's only argument is to simply assert that this order "has no impact on the stay of the Securities Class Action."  This conclusory statement fails to address at all, much less explain away, the unambiguous words of the order itself which are directed at the stay of the Securities Class Action and expressly authorize the payment of a settlement from insurance proceeds.  Thus, Lead Plaintiffs cannot have violated the automatic stay in seeking court approval of the settlement to permit the insurers to pay out proceeds as authorized by this Court.  The Trustee's Stay Motion should be denied.

## STATEMENT OF RELEVANT FACTS

8.      In 2012, OCZ purchased certain directors and officers' liability policies ("D&O Policies") to provide insurance coverage for its directors and officers, including its then-Chief Executive Officer, Ryan M. Petersen ("Petersen"), and its then-Chief Financial Officer, Arthur F.

Knapp, Jr. ("Knapp").[2]  The D&O Policies were "claims-made" policies and covered only claims first made from June 30, 2012 to June 30, 2013.

9.        The D&O Policies at issue provide the following coverage:

**1.1 Insured Persons' Liability:** The Insurer shall pay on behalf of the Insured Persons all Loss which they shall become legally obligated to pay as a result of a Claim first made during the Policy Period or Discovery Period, if applicable, against the Insured Persons for a Wrongful Act which takes place before or during the Policy Period ("Side A coverage").

**1.2 Insured Organization Reimbursement:** The Insurer shall pay on behalf of the Insured Organization all Loss which it is permitted or required by law to indemnify the Insured Persons as a result of a Claim first made during the Policy Period or Discovery Period, if applicable, against the Insured Persons for a Wrongful Act which takes place before or during the Policy Period ("Side B coverage").

**1.3 Securities Action Liability:** The Insurer shall pay on behalf of the Insured Organization all Loss which it shall become legally obligated to pay as a result of a Securities Action first made during the Policy Period or Discovery Period, if applicable, against the Insured Organization for a Wrongful Act which takes place before or during the Policy Period ("Side C coverage").[3]

10.        In the D&O Policies, "Insured Person(s)" means:

(a) one or more natural persons who were, now are, or shall hereafter be duly elected or appointed directors or officers of the Insured Organization, or, with respect to a Subsidiary operating outside the United States, their functional equivalent, regardless of title; and

(b) with respect to a Securities Action only, any other natural persons who were, now are, or shall hereafter be employees of the Insured Organization.[4]

The company is not, by definition, an Insured Person.

---

[2] The primary D&O policy is the Liberty Insurance Underwriters Inc. Executive Advantage Policy ("Liberty Policy") which provides $5 million of coverage.  There are three excess D&O Policies, each providing $5 million of coverage, which follow form to the Liberty Policy, in other words, the coverage position set forth are adopted in the three excess policies.  Finally, there is a $5 million "Side A" policy which provides coverage to the individual directors and officers but not OCZ for amounts not paid by any other source.  The insurance tower is described in detail in the Motion to Allow Payment and/or Advancement of Defense Costs and Other Loss Under D&O Liability Insurance Policies (the "D&O Motion") at ¶¶ 9-24 (attached as Exhibit F to the Declaration of Jason R. Adams In Support of the Stay Motion ("Adams Decl.")).

[3] Liberty Policy at ¶¶ 1.1, 1.2, 1.3.  A copy of the Liberty Policy is attached as Exhibit A to the D&O Motion, which is Exhibit F to the Adams Decl.

[4] Liberty Policy at ¶ 25.10.

11.     Significantly, the D&O Policies contain a priority of payment clause that states that any loss under Side A shall be paid before losses under Sides B and C or any other Insuring Agreement.  Liberty Policy at ¶ 12.1.  Thus, under the very terms of the D&O Policies, their proceeds are available first to satisfy loses against the insured individuals as a priority.  To avoid doubt, the D&O Policies further state that "It is further understood and agreed that the coverage provided under the Policy is intended to protect and benefit the Insured Persons."  Liberty Policy at ¶ 26.1.

12.     On August 9, 2012, OCZ announced that Knapp would retire as Chief Financial Officer.  Knapp's retirement went into effect on March 25, 2013.  On September 17, 2012, Petersen resigned from his position as Chief Executive Officer.

13.     Beginning in October 2012, certain shareholder complaints were filed in the United States District Court for the Northern District of California ("California Federal Court") against OCZ alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b).  On January 4, 2103, the California Federal Court consolidated the actions (as consolidated, the "Securities Class Action") and appointed the OCZ Investor Group as Lead Plaintiffs.  The Lead Plaintiffs filed a consolidated complaint against former officers and directors Petersen and Knapp (the "Defendants") and OCZ on March 5, 2013.

14.     At around the same time, certain other shareholders filed in California Federal Court derivative actions against current and former OCZ officers and directors based upon similar allegations.  A consolidated derivative complaint was filed on February 13, 2013 (the "Derivative Action").

15.     On May 20, 2013, the parties to the Derivative Action engaged in a mediation moderated by retired Chief United States Magistrate Judge for the Northern District of California Edward A. Infante ("Judge Infante").  On July 19, 2013, the parties entered into a stipulation of settlement that provided for the adoption of certain corporate reforms and for the payment of attorneys' fees (the "Derivative Settlement").

5

16.     On August 5, 2013, the California Federal Court granted preliminary approval to the Derivative Settlement and authorized the issuance of Notice of the Derivative Settlement to OCZ stockholders.  Notice was duly given on August 8, 2013 by filing the Notice of the Derivative Settlement attached to a Form 8-K with the Securities & Exchange Commission.  The Notice was also posted to OCZ's website and published in Investor's Business Daily on August 14, 2013.  Objections to the Derivative Settlement were due on October 7, 2013.  Despite this public notice of the Derivative Settlement, no OCZ creditor objected to it.

17.     On September 13, 2013, parties to the Securities Class Action participated in a mediation, also moderated by Judge Infante.  After extensive arms-length negotiation, the parties agreed to a settlement which provided for, among other things, the cash payment by OCZ's insurers of $7.5 million for the benefit of purchasers of OCZ securities from July 6, 2011 through January 22, 2013 (the "First Class Action Settlement").

18.     On October 17, 2013, the California Federal Court gave final approval to the Derivative Settlement and entered Final Judgment in that proceeding.  Under the terms of the Final Judgment, the California Federal Court found that the Derivative Settlement was fair, reasonable, and adequate to OCZ.  The Final Judgment also provided that:

> Plaintiffs on their own behalf and derivatively on behalf of OCZ, OCZ, and each of OCZ's shareholders (solely in their capacity as OCZ shareholders) shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Released Claims,[5] including Unknown Claims, against the Released Persons.[6]

---

[5] "Released Claims" are defined as "any and all claims for relief (including Unknown Claims...), rights, demands, suits matters, causes of actions, or liabilities, known or unknown, whether or not concealed or hidden, asserted or unasserted (including, without limitation, claims for damages, interest, attorneys' fees, costs, disgorgement, constructive trust, breach of duty of care and/or breach of duty of loyalty or good faith, breach of contract, fraud, negligence, gross negligence, negligent misrepresentation, insider trading, mismanagement, misconduct, waste of corporate assets, abuse of control, unjust enrichment, or violations of statutes, rules, or regulations, whether based on federal, state, local, statutory, or common law or any other law, rule, or regulation), that have been or could have been asserted in the Action by Plaintiffs, OCZ, or by any OCZ shareholder derivatively on behalf of OCZ, against each and every Defendant and the Released Persons arising out of and based upon the facts, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act that were or could have been alleged in the Action...."

[6] "Released Persons" are defined to mean "each and all of the Defendants and [their attorneys,  [and] insurers...].

6

Upon entry of the Final Judgment, the Derivative Action was terminated.

19.    On November 26, 2013, the First Class Action Settlement agreement was presented to the California Federal Court together with a motion for preliminary approval.

20.    On December 2, 2013, while the motion for preliminary approval was pending, OCZ and certain affiliates (the "Debtors") filed voluntary petitions of bankruptcy under chapter 11 of the Bankruptcy Code.  On December 5, 2013, a Suggestion of Bankruptcy was filed in the Securities Class Action and the case was stayed.

21.    On February 20, 2014, Petersen, Knapp, and other movants requested from this Court express authority that the insurers were authorized "to advance and/or reimburse defense costs and/or other loss (*including any settlement amounts and/or judgments*) in accordance with and subject to the terms and conditions of certain directors and officers liability insurance policies" (emphasis added). [7] The motion noted that the automatic stay should not limit the ability of insurers to pay defense costs and other losses from the proceeds of the D&O Policies as the proceeds were not the property of the OCZ bankruptcy estate but sought the requested authorization from an abundance of caution and to provide comfort to the insurers.  *Id.* at 13-24.

22.    This motion was unopposed and was granted on March 13, 2014 (the "D&O Order") (Docket No. 379).[8]  The D&O Order states that:

> Pursuant to 11 U.S.C. § 362(d)(1), the automatic stay is lifted for "cause" to the extent necessary to allow Liberty Insurance Underwriters, Berkley Insurance Company, Hudson Insurance Company, AXIS Insurance Company, and Allied World Assurance Company (U.S.) Inc. to advance and/or reimburse defense costs and/or other loss (*including any settlement amounts and/or judgments*) in accordance with and subject to the terms and conditions of the D&O Policies….

(Emphasis added)

23.    On February 20, 2014, OCZ (since renamed as ZCO Liquidating Corporation) also moved for authority from the Court for the insurers, to the extent necessary, to use the proceeds of the D&O Policies to satisfy the amounts to be contributed on behalf of OCZ and

---

[7] *See* D&O Motion (Docket No. 318) at 2, a copy of which is attached to the Adams Decl. as Exhibit F.
[8] Adams Decl., Ex. I.

Petersen and Knapp to the First Class Action Settlement (the "Settlement Motion").[9]  The Official Committee of Unsecured Creditors opposed the motion.[10]  The Committee raised no concern regarding the fairness or adequacy of the First Class Action Settlement.  Instead it challenged the reasonableness of the Derivative Settlement—even though that settlement had been finally approved by the California Federal Court without objection from any OCZ creditors—and sought time to investigate any potential claims the estate may have with regard to the current or former directors and officers of OCZ.

24.    OCZ's motion was also heard on March 13, 2014.  The Court determined to defer consideration of the motion for 30 days to enable the Committee to undertake its investigation.[11]  Contrary to the Trustee's representation in its Stay Motion (*see* Stay Motion at pp. 9-10), the Court did not deny the Settlement Motion.

25.    Counsel for the Committee made unofficial document requests on April 3, 2014 to counsel for OCZ and Nicholas Porritt, Lead Counsel in the Securities Class Action ("Lead Consuel").[12]  Lead Counsel promptly responded on April 4, 2014 agreeing to produce all non-privileged documents responsive to the Committee's requests and describing the documents that would be produced.[13]  Counsel for the Committee undertook to respond "asap" on whether the Committee still wanted the documents.[14]  Despite this undertaking, counsel for the Committee did not respond until October 2014, over six months later and only after Lead Counsel had moved again for preliminary approval of a settlement in the Securities Class Action.  Other than send out the informal document requests in April 2014, there is no evidence that the Committee

---

[9] *See* Motion Of ZCO Liquidating Corporation For Entry Of An Order, Pursuant To Sections 105(A), 362, And 363 Of The Bankruptcy Code And Bankruptcy Rule 9019, Approving Stipulation Of Settlement In Class Action Securities Litigation (Docket No. 321), a copy of which is attached to the Declaration of Nicholas I. Porritt filed in support hereof (the "Porritt Decl.") as Exhibit "A".

[10] *See* Objection Of The Official Committee Of Unsecured Creditors To Motion Of ZCO Liquidating Corporation For Entry Of An Order Approving Stipulation Of Settlement In Class Action Securities Litigation (Docket No. 363), a copy of which is attached to the Porritt Decl. as Exhibit "B".

[11] *See* March 13, 2014 Transcript (Docket No. 423) at 29 (Adams Decl., Ex. H).

[12] *See* email dated April 3, 2014 from R. Bartley to N. Porritt and others (Adams Decl., Ex. O).

[13] *See* email dated April 4, 2014 from N. Porritt to J. Adams (Adams Decl., Ex. O).

[14] *See* email dated April 8, 2014 from J. Adams to N. Porritt (Adams Decl., Ex. O).

undertook any investigation of potential claims the estate may have against OCZ's former officers and directors.

26.     OCZ's motion was heard again by the Court on May 12, 2014.[15]  At the hearing, counsel for the Committee advised the Court that Lead Counsel had "stonewalled" its document request.[16]  Counsel neglected to advise the Court that Lead Counsel had, in fact, agreed to produce all non-privileged documents responsive to its requests over a month previously and that the Committee had failed to follow up on this agreement.  The Court again deferred ruling on the Settlement Motion as OCZ had filed its Plan of Liquidation which contemplated the appointment of the Trustee.

27.     On July 30, 2014, the Bankruptcy Court confirmed the Debtors' Plan of Liquidation. The plan became effective on August 18, 2014.

28.     On September 11, 2014, OCZ was dismissed with prejudice as a defendant in the Securities Class Action.

29.     Also on September 11, 2014, Lead Plaintiffs and Petersen and Knapp executed a Stipulation of Settlement which provides for, among other things, the cash payment by the D&O insurers of $7.5 million for the benefit of purchasers of OCZ securities from July 6, 2011 through January 22, 2013 (the "Second Class Action Settlement").  Lead Plaintiffs then filed the Unopposed Motion of Lead Plaintiffs for an Order Granting Preliminary Approval of Class Action Settlement and Directing Dissemination of Notice to the Class (the "Second Settlement Motion").[17]

---

[15] *See* ZCO Liquidating Corporation's Supplemental Reply In Support Of Motion For Entry Of An Order, Pursuant To Sections 105(A), 362, And 363 Of The Bankruptcy Code And Bankruptcy Rule 9019, Approving Stipulation Of Settlement In Class Action Securities Litigation (Docket No. 488), a copy of which is attached to the Porritt Decl. as Exhibit "C".  Again, contrary to the Trustee's representation in its Motion (at 10), this was not a "request for this Court to reconsider its refusal to approve the [Settlement Motion]."

[16] *See* April 14, 2014 Transcript at 11-12 (Docket No. 519) (Adams Decl., Ex. J).

[17] Adams Decl., Ex. M.

30.     On September 25, 2014, the Trustee filed his objection to the Second Class Action Settlement.[18]  Lead Plaintiff, Petersen, and Knapp filed a Joint Reply on October 2, 2014.[19]  The Second Settlement Motion is due to be heard on November 13, 2014.

31.     In the Joint Reply, Lead Plaintiff noted that neither the Official Committee of Unsecured Creditors nor the Trustee had undertaken any meaningful investigation of potential legal claims since April 2014.  Belatedly, counsel for the Trustee inquired on October 8, 2014 about its document requests.  On October 13, 2014, Lead Counsel repeated its undertaking made back in April 2014 that it would produce documents.[20]  Nonetheless, in his Declaration dated October 16, 2014, Mr. Adams fails to mention this communication and states that "as of October 2, 2014, Mr. Porritt had not responded and Lead Plaintiffs have not provided any documents."  Documents were produced on October 29, 2014, just weeks after the Trustee confirmed that it wanted them.[21]

## ARGUMENT

### A.     The Automatic Stay Does Not Apply Because the Proceeds of the D&O Policies Are Not Property of the Trust

32.     The entire basis for the Trustee's motion is that Lead Plaintiffs have violated the automatic stay because the Second Settlement Motion is an impermissible claim against the proceeds of the D&O Policies.  This argument rests on the false premise that the D&O policy proceeds are "property of the Trust."  *See* Stay Motion at ¶ 33.   As detailed below, the insurance proceeds are not property of the Trust under settled precedent from this Court, precedent that the

---

[18] *See* Objection Of The Liquidation Trustee Of The ZCO Trust To Unopposed Motion Of Lead Plaintiffs For An Order Granting Preliminary Approval Of Class Action Settlement And Directing Dissemination Of Notice To The Class; Memorandum Of Points And Authorities In Support Thereof (Adams Decl., Ex. N).

[19] *See* Joint Reply To Objection Of The Liquidation Trustee Of The ZCO Trust To Unopposed Motion Of Lead Plaintiffs For An Order Granting Preliminary Approval Of Class Action Settlement And Directing Dissemination Of Notice To The Class, a copy of which is attached to the Porritt Decl. as Exhibit D.  Mr. Adams apparently did not want the Court to be aware of the full extent of the briefing on the Second Settlement Motion in the California Federal Court and so neglected to attach this paper to his declaration.

[20] *See* email dated October 13, 2014 from N. Porritt to J. Adams (Porritt Decl., Ex. E).

[21] *See* Porritt Decl. at ¶ 4.

Trustee completely fails to even mention in his Stay Motion.  Therefore, the stay has not been violated and the Stay Motion should be denied in its entirety.

### 1.      Insurance Proceeds Do Not Belong to the Estate

33.      Delaware courts have routinely found that in the present circumstances, the proceeds of D&O Policies do not belong to the estate.  *See In re Downey Fin. Corp.*, 428 B.R. 595, 605-607 (Bankr. D. Del. 2010); *World Health*, 369 B.R. at 810-811; *In re Allied Digital Technologies, Corp.*, 306 B.R. 505, 512-513 (Bankr. D. Del. 2004).

34.      *World Health* is directly on point and indistinguishable from this case. In *World Health*, the bankruptcy trustee actually initiated an adversary proceeding against the company's former directors and officers, alleging, among other things, breaches of fiduciary duty and unjust enrichment. *See World Health*, 369 B.R. at 808. The trustee petitioned the bankruptcy court to enjoin the approval of the securities class action settlement agreement in a case pending in Pennsylvania federal court and to direct the transfer of the proceeds of the D&O insurance policy to the trustee.  As in this case, the debtor was not a defendant in the securities class action. Just as is the case here, the insurance policies in *World Health* provided three types of coverage: (A) for directors and officers directly; (B) for indemnity claims made by directors and officers against the company; and (C) for certain securities claims made directly against the company. *See World Health*, 369 B.R. at 808. Just as in the present matter, the policy at issue in *World Health* contained a "priority of payments" provision which required payment of damages and defense costs to the directors and officers under "Coverage A" before any payment could be made under either of the other two types of coverage. *Id.*

35.      In *World Health*, the Court addressed the same issue as presented by the Trustee's Motion: "whether a debtor's creditors have priority over the debtor's shareholders in the proceeds of an insurance policy to which both claim entitlement." *Id*.  The Court correctly identified that the issue was not whether the insurance policies themselves were the property of the estate (as it is undisputed they were), but rather whether the proceeds of the policy are property of the estate.

11

*Id*. at 809.  The Court surveyed a variety of cases, including its own recent decision in *In re Allied Digital Technologies, Corp.*, and concluded that "insurance policy proceeds are not property of the estate where a debtor is covered for indemnification, but indemnification 'either has not occurred, is hypothetical, or speculative.'" *World Health*, 369 B.R. at 810 (quoting *Allied Digital*, 306 B.R. at 512).

36.    The Court in *World Health* noted that Side A coverage had priority under the terms of the insurance policies and the debtor had no right to any coverage under Side A.  *Id*. at 811.  Thus the debtor only had potential coverage under Side B, for indemnification claims and there were no such claims.  Accordingly, the debtor had no claims under the policy as an insured and thus the proceeds were not property of the estate.  *Id*.[22]

37.    A similar issue was raised in *Allied Digital*, 306 B.R. 505, where the Chapter 7 trustee brought an adversary proceeding against former directors and officers of the company in connection with a leveraged buyout.  The defendants sought payment of their defense costs under the terms of applicable directors and officers insurance policies; the Trustee opposed on the ground that he intended to look to the same policies to recover any judgment he may obtain against the defendants.  *Id*. at 508.  Judge Case held that the proceeds of the insurance policies were not property of the estate and, therefore, were not subject to the automatic stay.  *Id*. at 510.  "Generally, when insurance policies provide direct coverage to directors and officers, the proceeds of the insurance policy are not property of the bankruptcy estate because the proceeds are payable to the directors and officers not the estate."  *Id*.

38.    As in this case, the policy in *Allied Digital* provided direct coverage to the directors and officers through Side A but only provided coverage to the company through Side B to the extent it actually paid out indemnified costs.  Allied Digital had not paid out any covered indemnified costs and there were no other claims against the company that were potentially

---

[22] The Court also noted other impediments to the Trustee recovering under the insurance policies, including the "Insured v. Insured Exclusion" in the policies and the fact that the policies had lapsed before the Trustee asserted any claims.  *Id*.

covered by the insurance policies. Therefore, the proceeds of the insurance policies belonged to the directors and officers not to the debtor. "[W]hen the liability policy provides debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate." *Id*. at 512.

39.     Importantly, the Court held in *Allied Digital* that the hope that a Trustee may ultimately recover under a policy for claims it has against an insured is not a reason for the proceeds of the insurance policy to become property of the estate:

> The Trustee's real concern is that payment of defense costs may affect his rights as plaintiff seeking to *recover from* the D&O policy rather than as a potential defendant seeking to be *protected by* the D&O Policy. In this way, Trustee is no different than any third party plaintiff suing defendants covered by a wasting policy. No one has suggested that such a plaintiff would be entitled to an order limiting the covered defendants' rights to reimbursement of their defense costs.

*Id*. at 513 (emphasis in original).

40.     *In re Downey Financial Corp.* is also instructive. In *Downey*, former officers and directors of the debtor moved the Delaware Bankruptcy Court for an order stating that an automatic stay did not bar their use of D&O insurance proceeds in connection with securities actions brought against them, or, in the alternative, relief from the stay. *In re Downey Fin. Corp.*, 428 B.R. 595, 597 (Bankr. D. Del. 2010). The insurance policy provisions, including the priority of payment provision, were essentially the same as the policies here and in *World Health*. *Id.* at 599-601.

41.     The threshold question was whether the policy proceeds were property of the estate. *Id.* at 602. The Court stated that where the policy provides coverage to both directors and officers and the debtor, "the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate, but *only to the extent that the Policy's indemnification coverage or entity coverage actually protects the estate's other assets from diminution*." *Id.* at 604 (emphasis added). Tellingly, the Trustee in the present case cites this portion of the decision in *Downey*, but has omitted the language italicized above, thus presenting

13

a completely misleading impression of the *Downey* Court's ruling.  The Court continued that "[w]here a liability insurance policy includes entity coverage, but there are no covered Securities Claims outstanding, courts have generally held that the insurance proceeds are not property of the estate." *Id.* at 604 (citing cases).  Just as here, the lead plaintiff in *Downey* had dismissed the debtor from the securities class action, and therefore the debtor no longer enjoyed any direct coverage under the insurance policy.  *Id.*  Therefore, the court found that "the Policy's entity coverage is no longer protecting the estate's other assets from diminution." *Id.* at 605.

42.     Further, it was "extraordinarily unlikely" that the trustee would ever pay indemnification to the insureds sufficient to trigger indemnification coverage under the policy as, again just as here, the trustee had given no indication that he planned to indemnify the insureds, and the insureds had not sought indemnification post-petition or even filed a proof of claim.  *Id.* at 606-07.  Thus, like the entity coverage for securities litigation, the policy's indemnification coverage no longer protected any estate assets from diminution.  *Id.* at 607.  Thus, the Court held that the policy proceeds were not property of the estate.  *Id.*

43.     The holdings in *Downey*, *Allied Digital*, and *World Health* apply directly to the present case and support denial of the Stay Motion.[23]  As in those cases, the Trustee has no direct claim for entity coverage under the D&O Policies because OCZ has been dismissed from the securities class action with prejudice.  The Trustee is not indemnifying Petersen and Knapp; in fact, the Trustee has made it clear that the estate and Trust has no funds with which to indemnify them.  Stay Motion, p. 15.  Petersen and Knapp have not made any post-petition indemnification demands of the Trust.  Therefore, the D&O Policies do not protect any estate assets and their proceeds do not belong to the estate.

---

[23] The decisions in *Downey*, *Allied Digital*, and *World Health* are consistent with the rulings in other courts.  *See, e.g.*, *Groshong v. Sapp. (In re MILA, Inc.)*, 423 B.R. 537 (B.A.P. 9th Cir. 2010); *In re Adelphia Communications Corp.*, 298 B.R. 49 (S.D.N.Y. 2003).

### 2. The Trustee's Cited Authorities Do Not Support His Motion

44.     As noted above, the Trustee does not discuss *World Health* or *Allied Digital* at all in his Stay Motion, despite their obvious relevance.  His citation of *Downey* is incomplete and misleading.  He thus offers no reason why the Court should disregard the holdings of these decisions.  Conversely, the cases the Trustee actually does cite simply do not apply to this matter at all or, to the extent they have any relevance, also support denial of his Motion.  The Trustee cites *ACandS, Inc. v. Travelers Cas. & Sur. Co.* for the proposition that "insurance policies are considered part of the property of a bankruptcy estate."  Stay Motion at ¶ 20 (citing *ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006)).  However, the ownership of the *policies* is not the issue in this case; rather, as in the cases discussed above, the "important question here is whether the *proceeds* of the policy are property of the estate."  *In re World Health*, 369 B.R. at 809 (emphasis added).  In *ACandS*, the policy at issue was not even a D&O insurance policy; instead, it provided direct coverage to the entity for asbestos related claims.  *ACandS*, 435 F.3d at 255-56.  Therefore, termination of the policy would have had a direct, adverse effect on the entity's assets.  *Id.* at 260.  In the present case, by contrast, the debtor has no direct claim for insurance proceeds and is not indemnifying the Defendants.  Under *Downey* and similar cases cited above, the Trust does not own the proceeds of the policies.

45.     The Trustee argues that the automatic stay should apply to the Securities Class Action because the Trust has "a real interest in the litigation," Motion at 18, such that there is an "identity of interest" between the Trust and Petersen and Knapp.  *Id.* at 19.  The Trustee, however, cannot show that there is any identity of interest between the defendants in the Securities Class Action, Petersen and Knapp, and the Trust.  The Trustee cites *In re Midway Games, Inc.*, 428 B.R. 327, 334 (Bankr. D. Del. 2010) but in that case, the claims against the individual defendants were *not* covered by insurance.  Thus any judgment obtained in the third-party litigation would likely have led to an indemnification claim against the debtor.  *Id.* at 334-35.  Further, any adverse finding against the individual defendants would have led to statutory

penalties payable by the debtor under the relevant statute. *Id*. Accordingly, it was readily apparent that "a judgment against the third party defendant will in effect be a judgment against the debtor." *Id*. at 334. Similarly, in *In re W.R. Grace & Co.*, 386 B.R. 17 (Bankr. D. Del. 2008), the claims in the third-party litigation would lead to contractual indemnification obligations on behalf of the debtor. *Id*. at 30. Finally, in *In re Kaiser Aluminum Corp.*, 315 B.R. 655 (D. Del. 2004), a third-party was seeking to recover insurance premiums that had initially been paid by the debtor and that the debtor was actively seeking to have returned. *Id*. at 659.

46.     There is no similar circumstance here and, therefore, it is not credible to suggest that there is an identity of interest between Petersen and Knapp on one hand and the Trust on the other. Approving the settlement in the Securities Class Action will not lead to any indemnification obligation on behalf of the Trust as the settlement will be entirely funded from the proceeds of the D&O Policies. Lead Plaintiffs are not seeking to recover monies or property that OCZ previously possessed and is seeking to recover. Under the terms of the D&O Policies, the Trust has no right to the proceeds until it actually pays some indemnified costs which it has not done and which it will likely never do.[24]

47.     Indeed, applying the four factors identified by the Court in *In re Continental Airlines*, 177 B.R. 475, 481 (D. Del. 1993), in determining whether the automatic stay should apply to proceedings against a debtor's officers and directors shows that the automatic stay should not apply to the Securities Class Action. These four factors are: (1) the involvement of the director and officer in the reorganization process; (2) the burden imposed on the directors and officers if the litigation is not stayed; (3) the likelihood that the litigation would detract from the officers and directors' efforts to reorganize; and (4) whether the debtor's assets would likely be depleted as a result of the litigation. *Id*. Here, Petersen and Knapp are not involved in any reorganization process or efforts (neither were even officers or directors at the time that OCZ

---

[24] Similarly, there is no direct claim against the debtor asserted in the Securities Class Action so *Maritime Elec. Co., Inc. v. United Jersey Bank* is inapposite. *Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991)("Only MNY's conversion claim against Son is an action against a "debtor", and so only proceedings arising out of that claim were stayed automatically by the filing of Son's May 18, 1990 bankruptcy petition.").

filed for bankruptcy protection), the Trust's assets will not be depleted as a result of the litigation as the settlement will be funded entirely by the D&O Policies, and Knapp and Petersen will be burdened if the stay continues and the Securities Class Action is not resolved.  Despite the Trustee's conclusory assertion that permitting settlement of the Securities Class Action will "render the Plan and Trust meaningless," any claims that the Trust has against Knapp and Petersen or any other potential defendant are unaffected by settlement of the Securities Class Action, including claims against potential defendants who are not insureds under the D&O Policies.

> **3.     The Plan Injunction Does Not Apply To The Securities Class Action.**

48.     The Plan Injunction only enjoins the continuation of any proceeding "to collect, recover, or offset from the Estates, the Liquidation Trust, or any of their property."[25]  Because neither OCZ nor the Trust is a party to the Securities Class Action, Lead Plaintiff's activity in seeking final approval of the Second Class Action Settlement does not constitute an attempt to recover from the estate or the Trust.  As set forth above, the reasoning in *Downey*, *Allied Digital*, and *World Health* applies with equal force in this case and the proceeds of the D&O Policies are not the property of the estate or the Trust.  Thus, the Plan Injunction does not enjoin approval of the Second Class Action Settlement.

> **B.     The Bankruptcy Court Granted Relief from the Stay for Payment of Defense Costs, Including Judgments and Settlements**

49.     Petersen and Knapp's position has always been that the automatic stay does not apply to payments of defense costs and losses from the D&O Policies.  *See* D&O Motion at ¶¶ 31-34.  Petersen, Knapp, and other insureds (the "Movants") filed a motion for the D&O Order in the Bankruptcy Court at the request of the insurers.  The insurers required the order out of an abundance of caution to avoid any suggestion that the stay applied.  The Court granted the motion.  The D&O Order stated as follows: "Pursuant to 11 U.S.C. § 362(d)(1), the automatic

---

[25] *See* Plan § 7.2 (Adams Decl., Ex. A-1.)

stay is lifted for "cause" to the extent necessary to allow [the insurers] to advance and/or reimburse defense costs and/or other loss (*including any settlement amounts* and/or judgments) . . . ." Docket No. 379 at ¶ 2 (emphasis added). This order, while unnecessary under the law as noted above, disposes of the Trustee's Motion at the outset. The Trustee argues that "the [D&O Order] has no impact on the stay of the Securities Class Action." Stay Motion at ¶ 48, but this statement is clearly belied by the plain language of the D&O Order, which itself expressly applies to settlement payments. So did the underlying Motion which the Court granted. In that motion, Petersen and Knapp requested "entry of an Order of the Court authorizing [insurers] to advance and/or reimburse defense costs and/or other loss (*including any settlement amounts and/or judgments*), in accordance with and subject to the terms and conditions of certain directors and officers liability insurance policies (the "D&O Policies") issued by the Insurers to the Debtor for the benefit of its directors, officers, and other Insured persons." Adams Decl., Ex. F, pp. 1-2 (emphasis added) (footnote omitted). The Movants cited legal authority in support of their request that the court lift the stay as to settlement proceeds. Clearly, Petersen and Knapp asked for and received an order authorizing the insurers to pay settlements in the Securities Class Action.

50.     The Trustee claims that this interpretation of the D&O Order "flies in the face of this Court's ruling on the Settlement Motion. Stay Motion at ¶ 48. But the Court's actions with respect to the Settlement Motion are not inconsistent with the D&O Order. The Court never made a "ruling" on the Settlement Motion. The Court simply postponed its decision on the Settlement Motion at a time when the debtor was still a defendant in the class action. As the debtor is no longer a defendant, and the Trust has no interest in the proceeds of the D&O Policies, there is no longer any need for the Settlement Motion (to the extent there ever was) and the D&O Order (to the extent that it is necessary) allows proceeds of the D&O Policies to fund the Second Class Action Settlement.

### C. The Trustee Has No Direct Claims Against the Lead Plaintiffs and Its Claims Against Petersen and Knapp Have Been Released

51. The Trustee has never articulated any claims he intends to pursue that would be covered by the D&O Policies. The D&O Policies were "claims-made" policies which expired on June 30, 2013. It is thus too late for the Trustee to assert any claims that would be covered under these policies. The Trustee simply states, again in conclusory fashion, that he "believes" that he has causes of action against OCZ's former officers, directors, and professionals and the Derivative plaintiffs and counsel.[26] Stay Motion at ¶ 42. The Trustee then continues that "[a]ny recovery from these causes of action most likely would result in a recovery from the [D&O policies] for the benefit of creditors." *Id*. No authority is cited for this remarkable conclusion nor any facts beyond the simple chronology of the approval of the Derivative Settlement, the presentation of the First Class Action Settlement, and OCZ's filing for bankruptcy protection. Even though the concerns of creditors about the Derivative Settlement were first raised on March 10, 2014 and the Trustee has been in place since August 18, 2014, the ongoing "investigation" has apparently yielded nothing. Indeed, as shown by the six month delay in seeking documents, the creditors and the Trustee do not appear to be interested in pursuing the investigation at all.

52. In fact, the creditors and the Trust appear to have no claims by which they could recover through the D&O Policies. Claims on the behalf of OCZ investors are managed through the class action, and any potential claims by the company against the defendants were released by the Derivative Settlement and Final Judgment entered in the Derivative Action. This release also includes claims by OCZ or its successor the Trust against its insurers and attorneys. The Derivative Settlement was the product of arms-length negotiation assisted by retired Judge Infante. More importantly, the judgment approving the derivative settlement and releases, and dismissing the claims with prejudice, is final. It was ordered by a District Court judge after the judge found that the settlement "fully satisfied" the Federal Rules' procedural requirements,

---

[26] In the Stay Motion, the Trustee also expressed his belief that he had claims against Lead Plaintiffs and their counsel. However, in his Motion of the Liquidation Trustee Of The ZCO Trust For Leave To Conduct Discovery Pursuant To Rule 2004 Of The Federal Rules Of Bankruptcy Procedure (Docket No. 722), the Trustee no longer asserts that he believes he has any claims against Lead Plaintiffs or their counsel.

including notice, and found that the settlement was "fair, reasonable, and adequate as to each of the Settling Parties and . . . is in the best interests of OCZ and its shareholders."  The California Federal Court entered the Final Judgment and dismissed the case with prejudice on October 17, 2013, after notice and opportunity for objections to be heard.  The Trustee's allegations would effectively have this Court discredit and vacate the District Court order approving the settlement and dismissing the derivative action.

53.     The Trustee makes no showing that whatever claims might be imagined against individuals (a) would not be released under the Derivative Settlement and, by operation of law, under the Final Judgment of dismissal, or (b) would be covered by the D&O Policies at all.  The hypothetical claims identified by the Trustee against the directors who approved the derivative settlement are not covered because the policies are "claims made" and expired before any such claim was made.  Claims against the professionals involved in the settlement approval process are not covered for the same reason, and also because they are not insured persons under the policy by definition.

### D.     There Is No Basis For Any Award of Damages, Fees And Costs Against Lead Plaintiffs

54.     Damages or other relief may be awarded to an individual under 11 U.S.C. § 362(k) where the individual can show by the preponderance of the evidence: (1) that the action taken was in violation of the automatic stay; (2) that the action was willful; and (3) that the violation caused actual damages.  *In re Frankel*, 391 B.R. 266, 271 (Bankr. M.D. Pa. 2008).  The Trustee has failed to satisfy any of these three elements.  First, as discussed above, the actions of Lead Plaintiffs do not violate the automatic stay or, to the extent the proceeds of the D&O Policies were protected by the automatic stay, the stay had been lifted for the purposes of paying settlements on behalf of Petersen and Knapp.

55.     Second, even if the Court holds that the actions of Lead Plaintiffs violated the automatic stay, the violation was not willful.  While a willful violation does not require actual

intent to violate the automatic stay, a violation is not willful where it is "neither in defiance of a court order nor … contrary to certain contemporaneous interpretations of sections 362 and 365." *In re University Medical Center*, 973 F.2d 1065, 1088 (3d Cir. 1992) (actions taken in reliance of case law support involving very close and complex legal questions is not willful).  Here, Lead Plaintiffs' actions were taken in reliance on the express words of the D&O Order issued by this Court as well as legal precedent holding that the proceeds of the D&O Policies are not property of the estate and, therefore, not subject to the automatic stay.  In these circumstances, any violation of the automatic stay cannot be characterized as willful.

56.    Finally, the Trustee has presented no evidence supporting any amount of actual damages that he has suffered as a result of Lead Plaintiffs' actions.  "[A]ctual damages should be awarded only if there is concrete evidence supporting the award of a definite amount that can be ascertained with reasonable certainty." *Frankel*, 391 B.R. at 272 (*citing Doe v. United States*, 976 F.2d 1071, 1085 (7th Cir. 1992)).  The Trustee has plainly failed to meet this standard. Without proof of actual damages, punitive damages are also inappropriate. In any event, Lead Plaintiffs' conduct does not rise to the level of egregious conduct which is "more than a bare violation" of the automatic stay.  *Cochetti v. Desmond*, 572 F.2d 102, 106 (3d Cir. 1978); *see also In re B. Cohen & Sons Caterers, Inc.*, 108 B.R. 482, 488 (E.D. Pa. 1989) (awarding punitive damages for "oppressive and outrageous" conduct.

## CONCLUSION

57.     For the foregoing reasons, the Court should deny the Trustee's Motion in its entirety and grant such further relief as appropriate.

Dated: October 30, 2014                         Respectfully submitted,

                                                FARNAN LLP


                                                /s/ Brian E. Farnan
                                                Brian E. Farnan (Bar No. 4089)
                                                919 N. Market Street, 12th Floor
                                                Wilmington, Delaware 19801
                                                Tel: (302) 777-0300
                                                Fax: (302) 777-0301
                                                BFarnan@farnanlaw.com

                                                LEVI & KORSINSKY, LLP
                                                Nicholas I. Porritt, Esq.
                                                Adam M. Apton, Esq.
                                                1101 30th Street, Suite 115
                                                Washington, D.C. 20007
                                                Tel: (202) 524-4290
                                                Fax: (212) 333-2121

                                                *Attorneys for Lead Plaintiffs*